## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **GENE HIRT and ERIC S. CLARK,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Case No. 17-2279-JAR-GEB** |
| | ) |
| **UNIFIED SCHOOL DISTRICT NO. 287, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on three motions filed by Plaintiffs. For the reasons set forth below, Plaintiffs' Motion for Leave to File a Third Amended Complaint (**ECF No. 45**) is **GRANTED**; Plaintiffs' Motion to Compel (**ECF No. 58**) is **DENIED**; and Plaintiffs' Motion to Determine the Sufficiency of Answers and Objections (**ECF No. 74**) is **GRANTED in part** and **DENIED in part**.

## I.    Background[1]

### A.    Nature of the Case

The factual background of this case has been thoroughly explored in previous orders and will not be repeated in detail. In essence, plaintiffs Gene Hirt and Eric Clark are community members who assert claims against their local school district, Unified

---

[1] Unless otherwise noted, the information recited in this section is taken from the pleadings (Compl., ECF No. 1; 1st Am. Compl., ECF No. 6; 2nd Am. Compl., ECF No. 63), from the briefs regarding Plaintiffs' Motion to Amend (ECF Nos. 45, 46, 50, 52, 53), and from previous orders issued by Chief Judge Julie A. Robinson (ECF Nos. 41, 62). This background information should not be construed as judicial findings or factual determinations.

School District No. 287 ("District"), the school superintendent, Jerry Turner, and other district officials for alleged violations of their Constitutional rights under 42 U.S.C. § 1983.

In June 2015, Hirt attended a District school board meeting when an interaction during the meeting resulted in Turner banning Hirt from all school property. A July 13, 2015 letter from Turner to Hirt noted Hirt's "inability to express [himself] in a civil and socially acceptable manner." (ECF No. 1-1, Ex. A.) Since the July 2015 meeting, Hirt stopped attending school board meetings, and was later escorted from school property by law enforcement when Hirt and Clark attended an elementary school open house in August 2015. After this contact with law enforcement, Clark claims he stopped attending board meetings "solely because of fearing consequences that may arise from attending or speaking at those meetings." (ECF No. 63, at 10.)

In May 2017, Hirt and Clark, proceeding pro se, filed this lawsuit against the District, Turner (in both his official and individual capacities), and five school board members in their official capacities, claiming multiple Constitutional and statutory violations. Hirt asserts his prohibition from board meetings, without an opportunity to be heard, violates his First, Fifth, and Fourteenth Amendment rights. Clark claims his First Amendment rights have also been violated, because he now fears attending or speaking at board meetings. In addition, Plaintiffs allege Defendants violated both the Kansas Open Meetings Act[2] and the Kansas Open Records Act[3] by prohibiting Hirt's attendance at

---

[2] K.S.A. § 75-4317, *et seq.*
[3] K.S.A. § 45-215, *et seq.*

meetings and failing to respond to Plaintiffs' records requests when asked to produce a copy of the policy being enforced.

### B.    Procedural Posture

Plaintiffs originally filed their lawsuit against seven defendants (Compl., ECF No. 1; Am. Compl., ECF No. 6), but later voluntarily dismissed their official-capacity claims against the five school board members and the official-capacity claim against Turner (ECF No. 49).   Plaintiffs' remaining claims are those against the District and the individual capacity claims against Turner.

Upon filing the case, Plaintiffs sought a preliminary injunction to enjoin Defendants from taking "adverse action against Plaintiff Hirt based upon the July 13, 2015 letter" and from enforcing the "ad hoc policy" requiring them to express themselves in a "socially acceptable manner" at school board meetings. (ECF No. 4, at 11.)  During briefing on the injunction issue, Turner mailed a letter to Hirt on June 14, 2017, which permitted Hirt to attend any meeting or event on District property to which the public is invited, so long as he "refrain[s] from disruptive behavior" and "limit[s] [his] participation in the meetings to the allotted three minutes for public comments." (ECF No. 20-3, Ex. 3.)  Plaintiffs' motion for injunctive relief was then denied as moot by Chief Judge Robinson. (Mem. and Order, ECF No. 41.)  The Court determined Turner's June 2017 letter to Hirt "permits precisely the behavior in which Plaintiffs wish to engage according to their motion for a preliminary injunction, *i.e.*, participation in the patron forum portion of school board meetings." (*Id*. at 12.)

Plaintiffs sought reconsideration of Judge Robinson's order, which the Court denied. (Mem. Order, ECF No. 62.)  Plaintiffs also sought to file a Second Amended Complaint, which was unopposed by Defendants. (Order, ECF No. 59.)  Soon after the filing of that motion, however, Plaintiffs sought to file a Third Amended Complaint, which Defendants predictably oppose.  Plaintiffs also filed a motion to compel certain discovery responses from Defendants. (Motion, ECF No. 58.) After a December 22, 2017 conference with the undersigned to discuss the posture of the case and the pending motions, the parties were ordered to participate in mediation. (Orders, ECF Nos. 59, 66.)

Although the parties completed mediation (ADR Rpt., ECF No. 80), the effort was unsuccessful.  Plaintiffs filed a second discovery motion (ECF No. 74) and all pending motions are now ripe for the Court's decision.  The Court addresses each motion in the order of filing.

## II.    Plaintiffs' Motion for Leave to Amend Complaint (ECF No. 45)

Plaintiffs ask the Court for leave to file a Third Amended Complaint.  The proposed pleading adds eleven paragraphs to their previous pleading, including:  six paragraphs of factual allegations (¶¶ 34.b – 34.g); three additional causes of action (Counts IX – XI, ¶¶ 59.b-59d); and two additional requests for relief (¶¶60.4 (6) & (7)).

The focus of the amendments appears to be both the June 2017 letter, permitting Hirt to attend school events specifically open to the public, and the Court's October 23, 2017 denial of an injunction.  Plaintiffs' prior focus had been the District's enforcement of the "ad hoc policy" limiting Plaintiffs' speech to a "socially acceptable manner," based on the July 13, 2015 letter to Hirt.  Plaintiffs now contend, because the Court found the

4

"socially acceptable manner" policy is no longer being enforced, the District's continued restrictions on Plaintiffs' rights are apparently the result of either that earlier policy or some "as yet unknown policy" articulated by the June 14, 2017 letter. Plaintiffs interpret the 2017 letter to limit Hirt's (and by extension, allegedly, Clark's) access to school property solely for public events. Plaintiffs consider the 2017 letter as a point of "continuing restriction" that has not yet been included in the pleadings. They seek to add three additional causes of action, including violation of Hirt's First Amendment rights (Count IX); violation of Hirt's Fifth and Fourteenth Amendment rights (Count X); and violation of Clark's First Amendment rights (Count XI), all resulting from the "as yet unknown policy."

### A.    Legal Standards

Under the Federal Rules, the standard for permitting a party to amend his or her complaint is well established. A party may amend its pleading as a matter of course under Fed. R. Civ. P. 15(a)(1), either before the responding party answers or within 21 days after service of a responsive pleading. However, in cases such as this, where the time to amend as a matter of course has passed, without the opposing party's consent a party may amend its pleading only by leave of the court under Rule 15(a)(2).

Rule 15(a)(2) provides leave "shall be freely given when justice so requires," and the decision to allow an amendment is within the sound discretion of the court.[4] The court considers a number of factors in deciding whether to allow an amendment,

---

[4] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).

including timeliness, prejudice to the other party, bad faith, and futility of amendment.[5]
In exercising its discretion, the court must be "mindful of the spirit of the federal rules of
civil procedure to encourage decisions on the merits rather than on mere technicalities."[6]
The Tenth Circuit acknowledged that Rule 15 is intended "to provide litigants 'the
maximum opportunity for each claim to be decided on its merits rather than on
procedural niceties,'"[7] especially in the absence of bad faith by an offending party or
prejudice to a non-moving party.[8]   With these standards in mind, the Court evaluates
Plaintiffs' motion.

## B.    Discussion

Plaintiffs argue the proposed amendment is timely because the request to amend
was filed by the November 1, 2017 deadline established in the Scheduling Order. (ECF
No. 33.)   They contend the amendment is necessary to add additional causes of action
and factual allegations to support the additional claims, and they maintain Defendants
will not suffer substantial prejudice because this case is in its early stages.

Defendants oppose the amendment because they believe the amendment is futile.
They assert Hirt has no First Amendment right to enter school property during school

---

[5] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc.*, No. 12–2269–EFM-JPO, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013) report and recommendation adopted, 2013 WL 328986 (D. Kan. Jan. 29, 2013).

[6] *Hinkle v. Mid-Continent Cas. Co.*, No. 11–2652–JTM-KMH, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).

[7] *Carefusion 213, LLC v. Professional Disposables, Inc.*, No. 09–2616–KHV–DJW, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010) (citing *Minter*, 451 F.3d at 1204) (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[8] *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016) (collecting cases; internal citations omitted).

hours, nor an interest in entering school property during school hours which would be protected by the Fourteenth Amendment. They further argue Clark is not "chilled" by his speculation of an "unknown policy." Defendants also maintain Plaintiffs' request to amend was unduly delayed, because Hirt received the June 14, 2017 letter prior to filing the Second Amended Complaint (ECF 40). They contend Plaintiffs have no adequate explanation for waiting until now to assert new claims based on that letter or some "unknown policy." Additionally, Plaintiffs have already been deposed (see ECF Nos. 34, 35, and 40). Defendants argue the addition of new claims—after Plaintiffs' depositions are complete—would be prejudicial. The arguments of the parties are addressed in turn.

### 1. Futility

Of the factors analyzed by the Court under Rule 15(a)(2), Defendants first oppose Plaintiffs' amendment based on futility. As the party opposing amendment, Defendants bear the burden of establishing its futility.[9]

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[10] The proposed pleading is then analyzed using the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). When utilizing this standard, "the court must accept as true all well-pleaded factual allegations and view them in the light most

---

[9] *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC-KGS, 2015 WL 1957782, at *2 (citing *Boykin v. CFS Enter., Inc.,* No. 08–2249–CM–GLR, 2008 WL 4534400, at *1 (D. Kan. Oct. 6, 2008)).

[10] *Farmers Bank & Trust, N.A. v. Witthuhn*, No. 11-2011-JAR, 2011 WL 5920941, at *2 (D. Kan. Nov. 28, 2011) (citing *Jefferson Cnty. Sch. Dist. No. R–1 v. Moody's Investors's Servs., Inc.,* 175 F.3d 848, 859 (10th Cir. 1999)); *see also Neonatal Prod. Grp.*, 2015 WL 1957782, at *2 (internal citations omitted).

favorable to the pleading party."[11]  Only if the court finds "the proposed claims do not contain enough facts to state a claim for relief that are plausible on their face or the claims otherwise fail as a matter of law"[12] should the court find the amendment futile.

In their briefs, the parties engage in considerable discussion regarding the futility of Plaintiffs' proposed claims.  Defendants contend the claims are subject to dismissal, in part because the claims are alleged in conclusory fashion and because existing law simply does not support Hirt's claim that he has a First Amendment right to enter USD 287 during school hours to express himself; nor does the law establish that Hirt possesses a protected interest under the Fourteenth Amendment to enter USD 287 property during school hours.  Defendants also argue that Clark is not "chilled" by his speculation of an "unknown policy."

As to Defendants' first argument, they claim the proposed amendment "contains only conclusory allegations which do not raise a right to relief above a speculative level" (ECF No. 50 at 3).  But, the Court must afford Plaintiffs some leniency as pro se parties, and holds their pleadings to a "less stringent standard than formal pleadings drafted by lawyers."[13]  Plaintiffs' proposed amendments are not only in a very similar format to their earlier pleadings—which, the Court notes, Defendants did not oppose—but are based upon many of the same facts previously plead, and certainly the same facts earlier

---

[11] *Carefusion 213*, 2010 WL 4004874, at *5 (citing *Anderson v. Suiters,* 499 F.3d 1228, 1238 (10th Cir. 2007) (internal citations omitted)).

[12] *Id*. (citing *Raytheon Aircraft Co. v. U.S.,* 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007); *see also Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

[13] *Lemons v. Lewis*, 969 F. Supp. 657, 659 (D. Kan. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (other internal citations omitted).

briefed by the parties and considered by Chief Judge Robinson in her orders on the injunction issue. Construing the pro se claims liberally, the Court understands Plaintiffs' amendments and considers them to contain "more than labels and conclusions" or "formulaic recitations of the elements of their cause of action."[14] Interpreting the facts in the light most favorable to Plaintiffs, the Court finds the amendments contain "enough allegations to give the defendants notice of the theory under which their claim[s] [are] made."[15]

The remainder of Defendants' futility arguments are more akin to summary judgment contentions. Defendants cite the Tenth Circuit case of *First Unitarian Church of Salt Lake City v. Salt Lake City Corp.*,[16] to contend the school is "not a speech forum at all" and Plaintiffs' First Amendment claims must fail (ECF No. 50, at 4). But the *Salt Lake City* case was decided at summary judgment, and is not directly on point. And the case appears to stand, in part, for the proposition that the forum's designation as a public, nonpublic, or no speech forum at all, is dependent upon objective characteristics of the property and the actual public access and uses previously permitted.[17] This is information which is more appropriately developed through discovery and argued in later dispositive motions.

---

[14] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (discussing the *Twombly* opinion and its requirement that "factual allegations must be enough to raise a right of relief above the speculative level") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) (other internal citations omitted).

[15] *See id*. at 1249.

[16] *First Unitarian Church of Salt Lake City v. Salt Lake City Corp.*, 308 F.3d 1114 (10th Cir. 2002).

[17] *Id*. at 1125.

Likewise, Defendants cite three cases from other jurisdictions to contend Hirt does not have an interest in entering school property that would be protected by the Fourteenth Amendment.  In *Lovern v. Edwards*,[18] the Fourth Circuit Court of Appeals upheld a district court's decision to dismiss Lovern's federal Constitutional claims as frivolous. Lovern was the non-custodial parent of public school children, who was barred from entering school property "due to his continuing 'pattern of verbal abuse and threatening behavior towards school officials.'"[19]  After holding an evidentiary hearing on Lovern's request for an injunction and to determine whether the court had subject matter jurisdiction over the claims, the court dismissed the complaint without prejudice.

The Third Circuit dealt with a similar claim in *Cole v. Montague Board of Education*.[20]  There, pro se plaintiffs sued the school superintendent, a law enforcement officer, and other school officials after Mr. Cole was escorted off school property and the school board banned the Coles from the public school without a hearing.  Along with their Due Process claims, the Coles asserted various other state law tort claims.  The school defendants filed various dispositive motions, including a motion to dismiss, motion for summary judgment, and motion for judgment on the pleadings; all of which were granted.  Regarding the Coles' due process claim, the court cited *Lovern* to find the claim lacked merit.[21]

---

[18] *Lovern v. Edwards*, 190 F.3d 648, 650-51 (4th Cir. 1999)
[19] *Id*. at 652.
[20] *Cole v. Montague Board of Education*, 145 Fed. Appx. 760 (3rd Cir. 2005).
[21] *Id*. at 762-63.

Defendants also rely on a 1988 Eastern District of Pennsylvania case, *Henley v. Octorara Area School District*.[22]    In *Henley*, the plaintiff was barred from school property after he and others had engaged in criminal activities involving school students and on school grounds.   When deciding competing motions for summary judgment, the court concluded the letter prohibiting Henley's appearance on school property did not violate his constitutional rights.[23]   Although the court found that Henley's right to come onto school property did not require any sort of due process hearing, the court did so in the context of Henley's earlier criminal conduct.   Additionally, despite finding school officials may act "to protect the student body from harmful and disruptive behavior by non-students,"[24] such need for action was much clearer in *Henley*, where the men prohibited from school property had recent criminal convictions involving school property.

Though this Court makes no predictions about the success of some later dispositive motion by Defendants, the Court does find Defendants' cited authorities to be either non-binding or sufficiently distinct such that they do not prevent Plaintiffs' amendments at this stage.   In *Lovern*, the court dismissed the complaint after an evidentiary hearing; here, discovery is ongoing and no such hearing has occurred.   In *Cole*, the court underwent very little analysis and largely relied upon the decision in *Lovern*.   And, the plaintiff in *Henley* had an underlying criminal conviction involving the

---

[22] *Henley v. Octorara Area School District*, 701 F. Supp. 545 (E.D. Pa. 1988),
[23] *Id*. at 551-52
[24] *Id*. at 551.

school system, evidence of which was before the court when considering summary judgment.

Here, the Court is tasked with determining whether Plaintiffs' Third Amended Complaint is plausible on its face, not whether Defendants are entitled to judgment after presentation of evidence. Although the Court recognizes Defendants could present a viable defense in a later dispositive motion, at this juncture, given the lack of binding authority and current posture of this case, the Court finds a dismissal would be premature and therefore cannot find Plaintiffs' proposed amendment entirely futile. The issue in resolving a Rule 12(b)(6) motion to dismiss, or the futility of a proposed amendment, is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[25]

Exercising its discretion, and recognizing Defendants will have an opportunity to challenge the sufficiency of the new claims through a later dispositive motion,[26] the Court will not deny Plaintiffs' proposed amendment on the basis of futility. Permitting the filing of the proposed amendment "comports with the liberal amendment policy of Fed. R. Civ. P. 15(a)"[27] where Defendants may later challenge the claim[28] and particularly in light of the lack of prejudice to Defendants discussed below.

---

[25] *Carefusion 213*, 2010 WL 4004874, at *5.

[26] *See, e.g., Carefusion 213*, 2010 WL 4004874, at *6 (finding "Defendants' arguments are better suited for resolution on a motion for summary judgment"); *see also Quality Time, Inc. v. W. Bend Mut. Ins. Co.*, 12-1008-JTM-GLR, 2012 WL 2872226, at *2 (D. Kan. July 12, 2012) (citing *Tommey v. Computer Sciences Corp.*, No. 11–2214–EFM, 2012 WL 646022, at *2 (D. Kan. Feb. 28, 2012).

[27] *Quality Time, Inc.*, 2012 WL 2872226, at *2.

[28] *See, e.g., Walker v. Axalta Coating Sys., LLC*, No. 14-2105-JAR-JPO, 2015 WL 685834, at *3 (D. Kan. Feb. 18, 2015) (granting plaintiff's motion to amend the complaint over defendant's

2.        **Prejudice**

Defendants' sole argument regarding the prejudice they may face if the amendment were permitted boils down to Plaintiffs' delay in seeking amendment, particularly after their depositions were taken. They contend amendment at this point will deprive them of the opportunity to explore the new claims in depositions.

As the parties opposing amendment, Defendants bear the burden to demonstrate undue prejudice within the meaning of Rule 15.[29] Under Rule 15, "undue prejudice" means "undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant."[30] While any amendment invariably causes some "practical prejudice," undue prejudice means that the amendment "would work an injustice to the defendants."[31]

Considering the nature of the new claims and the procedural posture of this litigation, the Court notes there will be some practical prejudice, but struggles to discern any true injustice which would occur from the proposed amendments. Much of the facts supporting the new claims arise from the same occurrences as Plaintiffs' other claims, and have been discussed in prior briefing. Discovery is likely to overlap. And, although Plaintiffs have already been deposed, discovery is ongoing and does not conclude for

---

objection of futility, and finding the issue of punitive damages more appropriately addressed at a later stage in the case by the presiding U.S. District Judge).

[29] *Carefusion 213*, 2010 WL 4004874, at *4 (internal citations omitted).

[30] *Id*. (citing *U.S. v. Sturdevant,* No. 07–2233–KHV–DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008) (citing *Minter,* 451 F.3d at 1208; *Jones v. Wildgen,* 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004))).

[31] *Id*. (citing *Sturdevant,* 2008 WL 4198598, at *3; other internal citations omitted).

nearly three months.[32] This timeframe is adequate for any additional discovery and provides Defendants with sufficient opportunity to fully defend the new claims. Creative scheduling, targeted written discovery, and narrowed additional depositions could ease any burden resulting from the amendments.

### 3.    Undue Delay

In addition to its futility and prejudice arguments, Defendants contend Plaintiffs' request is unduly delayed.  To determine whether an amendment is untimely, or unduly delayed, the Court evaluates the reasons for delay.[33]  When a party's delay cannot be adequately explained, the "unexplained delay alone justifies the district court's discretionary decision"[34] to deny leave to amend and "courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend."[35]  But lateness alone does not "justify denial of the amendment."[36]

Here, the Court does not find the delay so inexplicable as to prevent its filing. Although these parties have been litigating for some time, Plaintiffs sought amendment within the deadline established in the Scheduling Order.  As previously noted, the current procedural posture of the case weighs in Plaintiff's favor.  Although the timing of the June 14, 2017 letter would, on its face, suggest Plaintiffs should have sought to include

---

[32] The discovery deadline is July 1, 2018 (Sched. Order, ECF No. 33).
[33] *Minter*, 451 F.3d at 1206.
[34] *Id*. (citing *Frank v. U.S. West*, 3 F.3d 1357, 1365–66 (10th Cir. 1993); *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994)).
[35] *Id*. (citing *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir.1987)).
[36] *Id*. at 1205 (citing *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir.1975)).

the letter in earlier pleadings, the Court acknowledges the pro se Plaintiffs' confusion and reliance on the October 23, 2017 injunction ruling before seeking to amend their claims. Therefore, their delay in seeking amendment is not unexplained or "undue."

### C.    Conclusion on Motion to Amend (ECF No. 45)

Applying the standards for consideration of amendment under Rule 15, accepting all Plaintiff's factual allegations as true, and affording Plaintiffs leniency as pro se litigants, the Court does not deny the amendment based upon Defendants' futility contentions.  Additionally, although amendment may create some difficulty, Defendants failed to demonstrate *undue* prejudice which would occur because of the amendment. Therefore, finding that Plaintiff's proposed amendment is not clearly futile, would cause no undue prejudice, and was filed within the appropriate timeframe, the Court prefers this case to proceed on its full merits.[37]   In the interests of justice, and exercising its discretion, the Court will allow Plaintiffs to file their Third Amended Complaint.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Amend the Complaint (**ECF. 45**) is **GRANTED**.   Plaintiffs shall file their Third Amended Complaint **within 14 days** of the filing of this order, and the new caption of the case must reflect the earlier dismissal of parties (*see* ECF No. 49).   Defendants must answer the Third Amended Complaint **within 14 days** of its filing.   Plaintiffs are *strongly* cautioned

---

[37] *See Hinkle*, 2012 WL 2581000, at *1 (citing *Koch*, 127 F.R.D. at 209).

that future amendments will be met with considerable scrutiny[38] given the previous multiple opportunities to articulate their claims.

### III.   Plaintiffs' Motion to Compel Answers to Interrogatories (ECF No. 58)

On November 6, 2017, Plaintiffs served a third set of written discovery on Defendants.  After Defendants responded on December 6, 2017, Plaintiffs attempted to reach Defendants' counsel to confer regarding what they viewed as insufficient responses to multiple interrogatories.  After unsuccessful attempts to confer, Plaintiffs timely filed their motion to compel answers to nine disputed interrogatory answers. (ECF No. 58.)

### A.   Compliance with D. Kan. Rule 37.2

Pursuant to D. Kan. Rule 37.2, this Court "will not entertain any motion to resolve a discovery dispute" unless counsel, or in this case, the moving party, "has conferred or has made reasonable effort to confer with opposing counsel" before filing a motion.  On review of the briefing, the Court is troubled by the half-hearted and self-serving efforts at conference demonstrated by both sides.  Plaintiffs provided untenable ultimatums without consideration of opposing counsel's possible scheduling difficulties. (*See* Defs.' Resp., ECF No. 64 at 2.)  At the same time, defense counsel declined to make either attorney available for a phone call for several days' time. (*See* Pls.' Motion, ECF No. 58-1 at 4.) Although the Court understands litigation has its difficulties, in this instance, all parties could have presented more genuine and accommodating efforts at conference.

---

[38] *See Frank*, 3 F.3d at 1365 (citing *Castleglen, Inc. v. Resolution Trust Corp.,* 984 F.2d 1571, 1585 (10th Cir.1993); *Foman,* 371 U.S. at 182) (noting "failure to cure deficiencies by amendments previously allowed" is one reason the court may use to deny leave to amend).

However, despite the parties' minimal efforts to confer to that point, the undersigned held a phone conference on December 22, 2017 to discuss the pending discovery issues, in which Plaintiffs and defense counsel participated. The parties appear to have conferred following the Court's discussion and prior to Defendants' formal response, and they participated in mediation. In light of these later efforts, the Court addresses the merits of Plaintiffs' motion.

### B.    Disputed Answers

Of the initial nine interrogatory answers disputed by Plaintiffs, six disputes remain following Defendants' supplemental responses.[39] Each disputed request is addressed in turn.

### 1.    Interrogatory No. 7

Plaintiffs' Third Interrogatory No. 7 reads:

> For the statement in the July 13, 2015 letter (See Bates D000810) that "this action by the Board of Education of USD 287" identity [sic] whether that statement meant that the action was the result of some policy previously implemented by the Board of Education of USD 287 or if the statement meant something else, specifically as possible identify the meaning of that statement?

Defendants responded: "The statement 'this action' referred to the previous sentence in the letter, Bates No. 810, explaining to Mr. Hirt that he was excluded from school property due to his behavior." Plaintiffs contend Defendants' answer is incomplete.

---

[39] The disputed interrogatories and responses are reproduced in full as both an attachment to Plaintiffs' motion (ECF No. 58-3, Ex. A) and in the body of Defendants' Memorandum in Opposition (ECF No. 64). All requests and responses included in Section III.B of this Order are taken from these briefs unless otherwise indicated.

The first sentence of the July 13, 2015, letter clearly reads "[A]fter your rude and uncivil behavior . . . you [Hirt] *will no longer be allowed on USD 287 property*", and the second sentence states Hirt's behavior "brought about *this action* by the Board of Education."    (ECF No. 1-1, Ex. A, emphasis added.)    Defendants answered Plaintiffs' interrogatory by stating simply that the "action" mentioned, in sentence two, specifically references Hirt's exclusion from school property as outlined in the immediately preceding sentence.    The Court finds Defendants fully answered Plaintiffs' question as propounded, and Plaintiffs' motion is **DENIED** regarding Interrogatory No. 7.

### 2.    Interrogatory No. 12

Plaintiffs' Third Interrogatory No. 12 asks:

> For the allegation that Hirt's "disruptive and belligerent behavior occurred while he was seated in the audience." (See Dk. 20, p. 3, at ¶ 14) [Defs.' Resp. to Motion for Preliminary Injunction], for each disruptive behavior event, please identify
> > a) the date of the board meeting
> > b) the specific behavior in detail
> > c) the extent and duration of the alleged disruption
> > d) whether or not Hirt was asked to leave the meeting.

Defendants' initial answer stated:

> See previously produced documents Bates Nos. 782-86 (Turner's Declaration) and 788-792 (Gene Hirt Documentation) which contain dates and descriptions of Mr. Hirt's behavior.  Mr. Hirt was not asked to leave any board meetings due to the behavior referenced in Bates Nos. 782-786 and 788-792.

Defendants later supplemented their answer to include: "Defendants have no recollection of additional dates of Mr. Hirt's disruptive behavior at board meetings. Defendants have no recollection of the duration of Mr. Hirt's disruptions during board meetings."

Plaintiffs contend Defendants failed to adequately identify the duration of any of the alleged disruptions. They argue Defendants are claiming the events took place, so they must have some recollection of the duration.

Under Fed. R. Civ. P. 33(b)(3), Defendants are tasked with answering each interrogatory "separately and fully," and they may elect to answer by specifically designating, in detail, those records which answer the interrogatory.[40] The specifically-referenced Bates-numbered documents apparently contain dates and descriptions of Hirt's alleged behavior. Defendants state they have produced all responsive documents, and acknowledge their duty to supplement under Fed. R. Civ. P. 26(e). Although the Court has not been provided copies of the Bates-numbered documents, it takes Defendants at their word as officers of the Court that the documents do, in fact, contain that information. If Plaintiffs do not agree with their Defendants' contention that they do not recall the duration of these events, they can take that factual dispute up at a later stage of the litigation. But Plaintiffs cannot compel Defendants to change their answer "simply because they don't agree."[41] Given the information before it, the Court finds Defendants answer sufficient, and Plaintiffs' motion is **DENIED** regarding Interrogatory No. 12.

### 3.   <u>Interrogatory No. 13</u>

In their Third Interrogatory No. 13, Plaintiffs ask Defendants to identify the federal law which applies to a specific statement in an agenda utilized at a specific school

---

[40] *See Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 305 (D. Kan. 1996), referencing Rule 33(b) and (d) (previously Rule 33(b) prior to its 2006 amendment).
[41] *Thermal Sols., Inc. v. Imura Int'l U.S.A., Inc.*, No. 08-2220-JWL-DJW, 2009 WL 10668995, at *4 (D. Kan. Dec. 4, 2009).

board meeting (ECF No. 58-3, Ex. A). Defendants responded, "Generally, the Board adopts policies recommended by the Kansas Association of School Boards ("KASB"). To the best of defendants' knowledge, this language was recommended by KASB and likely refers to the Family Educational Rights and Privacy Act." (*Id*.) Defendants contend they have no additional information to add.

Plaintiffs' Reply memorandum (ECF No. 67, at 11) indicates that Plaintiffs sent a later request for admission to follow up on this topic, and notes its resolution "will have minimal prejudice" and Plaintiffs are "not adverse to a finding by the Court that this particular dispute, about Interrogatory #13, is prudentially moot." In light of Plaintiffs' Reply, the issue is **MOOT**; however, even if the issue were not moot, the Court finds Defendants have sufficiently answered.

### 4.       Interrogatory No. 15

Plaintiffs' Third Interrogatory No. 15 seeks:

> For each allegation received about someone being "afraid" of Mr. Hirt or staff being "afraid" of Mr. Hirt or "afraid for their safety", please identify
>> a) the date,
>> b) the person(s) who was/were afraid and
>> c) the specifics of any explanation for the reasons why he/she/they
>>    was afraid.

Defendants' initial answer referred to previously-produced documents "regarding Mr. Hirt's behavior. Defendants are unaware of other specifics." That answer was incomplete. However, Defendants later supplemented their answer to read:

> Defendants previously produced Bates Nos. 782-786 and 788-792, regarding Mr. Hirt's behavior. These documents contain the known dates of Mr. Hirt's behavior that caused staff to be afraid of Mr. Hirt. Defendants recall that Brenda Fredericks, Trisha Kaub, Audra Altic, and Teresa

Hawkins reported they were afraid of Mr. Hirt.  Defendants recall that generally staff was afraid of Mr. Hirt due to his behavior.  Defendants recall that staff generally described Mr. Hirt as behaving in an angry and belligerent manner.  If defendants locate additional information, this interrogatory will be supplemented.

Despite the supplementation, Plaintiffs contend the answer remains incomplete. Plaintiffs ask the Court to require Defendants to identify the date each of the identified persons were afraid.  Defendants contend they do not recollect the specifics for the events, but provided general concerns.

Although Defendants' initial answer was incomplete, the supplemental answer identified specific documents and names of individuals.  The Court finds Defendants' answer sufficient and Plaintiffs' motion is **DENIED** regarding Interrogatory No. 15.

### 5.    Interrogatory No. 17

Plaintiffs' Third Interrogatory No. 17 reads as follows:

For each alleged denial of entry alleged (See Dk. 20, p. 3 at ¶ 18), please identify
   a) the name(s) of who denied the entry,
   b) identify what "entry" was denied (i.e., school building, classroom, parking lot, all property, etc.) and
   c) all reasons the person had for denying the entry.

Defendants' initial answer was questionable, stating only, "See Bates Nos. 782-786 and 788-792, providing information regarding denial of entry of Mr. Hirt.  Defendants are unaware of other specifics."  Defendants later supplemented their answer to read:

Defendants previously produced Bates Nos. 782-786, 788-792, and 812 regarding denial of entry of Mr. Hirt. These documents contain the specific dates and locations regarding denials of Mr. Hirt. All documents in defendants' possession or known to defendants that are responsive to plaintiffs' discovery requests have been produced. To the best of defendant's recollection, Principal Cathy Brandt denied Mr. Hirt access to

21

the Appanoose Elementary School. Principal Brady Anschutz and the Franklin County Law Enforcement removed Mr. Hirt from Williamsburg Elementary School on August 19, 2015. If defendants locate additional information, this interrogatory will be supplemented.

Plaintiffs contend this answer remains incomplete, because Defendants' answer only provides "generalized location references" and failed to identify "the specific 'entry' that was denied with more specificity (e.g., parking lot, lobby, classroom, etc.)." (Pls.' Reply, ECF No. 67 at 11).

Because Defendants' supplemental answer identified specific documents, those names of administrators denying entry, and identifies specific school buildings for which entry was barred—which, the Court notes, is a suggestion found in the interrogatory itself [42], the Court finds Defendants' answer sufficient. Plaintiffs' motion is **DENIED** regarding Interrogatory No. 17.

### 6.   <u>Interrogatory No. 19</u>

In this interrogatory, Plaintiffs ask:

For the allegation that "Hirt has made several unauthorized visits on school property" (See Dk. 20, p. 3, at ¶ 17), for each such visit please identify
   a) the date, time, and place of the visit;
   b) why and how the visit was "unauthorized"; and
   c) all details about what was observed and who made the observation(s).

Defendants' initial answer was lacking, and noted, "See Bates Nos. 782-786 and 788-792, providing documented information. Defendants are unaware of other incidents.

---

[42] Interrogatory No. 17(b) provides as examples, "<u>school building</u>, classroom, parking lot, all property, etc." (emphasis added).

USD 287 policies KGD and KGDA, Bates Nos. 208-209, address public conduct on school property." However, Defendants later supplemented their answer to read:

> See Bates Nos. 782-786 and 788-792, providing documented information. Defendants are unaware of other incidents. USD 287 policies KGD and KGDA, Bates Nos. 208-209, address public conduct on school property. Mr. Hirt's visits were considered unauthorized because he had no official permission or approval for entering onto school property on those dates identified in Bates Nos. 782-786 and 788-792. Defendants are unaware of other specific information requested in this interrogatory. If defendants locate additional information, this interrogatory will be supplemented.

As previously noted in the discussion of Interrogatory No. 12, Bates Nos. 782-786 and 788-792 contain the dates and locations of Hirt's visits to school property.    Defendants have then sufficiently responded to Plaintiffs' interrogatory by specifying the details of the visits, and explaining the visits were unauthorized pursuant to specific policies also provided by Defendants, "because he has no official permission or approval for entering onto school property on those dates."    The Court finds this answer sufficient, and Plaintiffs' Motion is **DENIED** regarding Interrogatory No. 19.

### C.    Conclusion on Motion to Compel (ECF No. 58)

For the reasons stated above, Plaintiffs' Motion to Compel Answers to Interrogatories (**ECF No. 58**) is **DENIED**.

## IV.    Plaintiffs' Motion to Determine the Sufficiency of Answers and Objections (ECF No. 74)

On December 6, 2017, Plaintiffs served their fourth set of discovery requests on Defendants.    Defendants received an extension and timely served their responses on January 18, 2018.    Plaintiffs note that the parties disagreed on the responses to twelve

requests; however, the parties have narrowed their disputes to seven responses for which Plaintiffs filed the instant motion.

### A.    Compliance with D. Kan. Rule 37.2

As discussed above, the moving party is required to certify they have sufficiently complied with D. Kan. Rule 37.2 before filing a discovery motion.  However, Plaintiffs failed to include a certification in their motion "describing with particularity the steps taken" to resolve the disputed discovery.[43]  But the motion does note the parties' "good faith effort to resolve" their disputes, and in doing so, they apparently narrowed the disputes from twelve to seven.  Defendants do not address the certification requirement in their briefing, and since the motion was filed, the parties have engaged in mediation. Permitting the pro se plaintiffs some leniency, the Court finds the parties have apparently conferred, and it its discretion, will address the motion on its merits.

### B.    Disputed Responses

Although Plaintiffs title their motion as one to determine the sufficiency of Defendants' answers to their Fourth Request for Admission under Fed. R. Civ. P. 36(a)(6), Plaintiffs also seek responses to their Fourth Set of Interrogatories under Rule 33 and their Fourth Request for Production of Documents under Rule 34.  Therefore, the Court also treats the motion as a motion to compel discovery responses under Rule 37(a)(3)(B).  Each disputed answer and discovery response[44] is addressed below.

---

[43] D. Kan. Rule 37.2.

[44] The disputed discovery requests and responses are reproduced in full as both an attachment to Plaintiffs' memorandum in support of their motion (ECF No. 75-2, Ex. A) and in the body of

### 1.    <u>Fourth Requests for Admission</u>

Fed. R. Civ. P. 36 provides the standards for requests for admission.  This rule "allows a party to serve on another party a written request to admit 'the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents.'"[45]

The rule includes precise requirements for a party's answers to such requests:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.  A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.  The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.[46]

"Requests for admission serve 'two vital purposes, both of which are designed to reduce trial time.  Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be [eliminated].'"[47]  The primary purpose of a request for admission is "not to discover additional information concerning the subject of the request, but to force the

---

Defendants' Memorandum in Opposition (ECF No. 86).  All requests and responses included in Section IV.B of this Order are taken from these briefs unless otherwise indicated.

[45] *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-1094-JTM-TJJ, 2017 WL 1408226, at *1 (D. Kan. Apr. 20, 2017) (quoting Fed. R. Civ. P. 36(a)(1)).

[46] Fed. R. Civ. P. 36(a)(4).

[47] *Nat'l R.R. Passenger Corp.*, 2017 WL 1408226, at *1 (quoting Fed. R. Civ. P. 36 advisory committee's note to 1970 amendment).

opposing party to formally admit the truth of certain facts, thus allowing the requesting party to avoid potential problems of proof."[48]

If the requesting party is dissatisfied with the opposing party's response, "the requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served."[49]

### a.    <u>Request for Admission No. 6</u>

This request reads, in pertinent part:

> . . . Mr. Clark sent a letter dated March 24, 2017 to USD 287 which was a request for public records and that letter was received by USD 287 on or about March 26, 2017 and; after several intervening correspondence to clarify the initial request, **USD 287 denied access to responsive records(s) to that request based on a claimed exception found at K.S.A. 45-221(a)(14) which USD 287 cited to on April 20, 2017** (emphasis added).

In response, Defendants stated:

> It is admitted Mr. Clark sent a request for open records on March 24, 2017 to USD 287. It is admitted Superintendent Jerry Turner sent the initial response to Mr. Clark's letter on or about March 26, 2017. It is admitted additional correspondence between Mr. Turner and Mr. Clark occurred, generally clarifying Mr. Clark's initial request on March 24, 2017. **It is denied that access was denied based solely on exception K.S.A. 45-221(a)(14)** (emphasis added).

Plaintiffs take issue with Defendants' final sentence, which is responsive to the last clause of Plaintiffs' request (both emphasized above). Plaintiffs only take issue with

---

[48] *Id.* (quoting *Solis v. La Familia Corp.*, No. 10-2400-EFM-GLR, 2012 WL 1906508, at *2 (D. Kan. May 25, 2012)).
[49] Fed. R. Civ. P. 36(a)(6).

Defendants' use of the word "solely", and contend if Defendants were to admit the District denied access to the records under K.S.A. § 45-221(a)(14), such an admission would not admit access was the *sole* grounds for denial; simply that it was *one of the* grounds. The Court agrees. Finding Defendants' answer does not comply with Rule 36, Plaintiffs' motion is **GRANTED** regarding Request for Admission No. 6, and the Court orders the matter admitted.

### b. Request for Admission No. 7

Plaintiffs' Request for Admission No. 7 asked Defendants to admit or deny:

> The letter dated July 13, 2015 identified as Bates number D810 was sent to Mr. Hirt and, as of the date of this request, Defendants have/had not provided Mr. Hirt with any hearing or any method of appeal concerning any of the restrictions imposed upon Mr. Hirt by that letter.

Defendants answered:

> It is admitted that Bates No. D810 is a copy of the letter dated July 13, 2015 sent to Mr. Hirt. This request is denied because it improperly assumes Mr. Hirt had a right to appeal. It is denied that Mr. Hirt requested an appeal.

Plaintiffs contend the response is incomplete, because the request did not seek any admission or denial regarding any right to a hearing or appeal, but merely asks Defendants whether they have provided Hirt with either an appeal or hearing. Defendants admit, in their briefing, that Hirt "did not receive a hearing or an appeal after receipt of the July 13, 2015 letter." (ECF No. 86, at 4-5.) However, they argue that an unqualified admission here would be inaccurate, so Defendants qualified their answer in good faith.

Finding some merit to each parties' arguments, Plaintiffs' motion is **GRANTED in part**, and the Court **ORDERS** Defendants to amend their answer to Plaintiffs' Request for Admission No. 7.  Defendants should admit they have not provided Hirt with a hearing or method of appeal, but may also qualify their answer to reflect Hirt did not request a hearing or an appeal and Defendants contend he was not entitled to a hearing or an appeal.

### 2.    Fourth Set of Interrogatories

Fed. R. Civ. P. 33 governs interrogatories to parties.  "An interrogatory may relate to any matter that may be inquired into under Rule 26(b)," and "each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."[50] "The grounds for objecting to an interrogatory must be stated with specificity."[51]

### a.    Interrogatory No. 21

Plaintiffs' Interrogatory No. 21 asks, "Whose decision was it to lift some, but not all of the restrictions on Mr. Hirt (See Dk. 20-3) [the June 14, 2017 letter] and what were all of the reasons for that decision?"  Defendants responded, "Objection. This interrogatory erroneously assumes that the June 14, 2017 letter did not lift all restrictions on Mr. Hirt imposed by the July 13, 2015 letter."

Plaintiffs contend Defendants' objection is invalid, because the June 2017 letter lifts some restrictions but clearly states Hirt "should continue to refrain from coming on

---

[50] Fed. R. Civ. P. 33(a)(2), (b)(3).
[51]  Fed. R. Civ. P. 33(b)(4).

USD 287 property which is not generally open to the public."  Plaintiffs maintain Defendants should answer the question of who made the decision and why.

Defendants argue the lawsuit was filed based on the July 2015 letter, which excluded Hirt from all District property, and the June 2017 letter removed all restrictions of the 2015 letter and permitted Hirt to attend any school events generally open to the public.  Therefore, no restrictions remain.

Clearly, the parties interpret the "continue to refrain" statement very differently. Regardless, even if Defendants do not perceive this statement as a restriction, the interrogatory references the decision announced in the June 14, 2017 letter, and Defendants can answer who made the decision to send the letter and why.  Defendants' objection is **overruled**, Plaintiffs' motion is **GRANTED** regarding Interrogatory No. 21, and Defendants must serve an amended answer to Interrogatory No. 21 **within 14 days** of the filing of this Order.

### b.  <u>Interrogatory No. 22</u>

Plaintiffs' next interrogatory reads:

> If any of the continuing restrictions still remaining on Mr. Hirt (i.e., after providing the June 14, 2017 letter [Bates number D787]) were based on a policy (or policies) of USD 287, identify precisely which policy (or policies) and precisely how/why the policy (or policies) was violated.

Defendants answered, "Not applicable because no restrictions imposed by the July 13, 2015 letter remain."

Plaintiffs contend Defendants erroneously injected the July 2015 letter into the interrogatory.  Plaintiffs are asking what restrictions remain on Hirt, and if any

restrictions remain, they ask Defendants to identify the District policy on which those restrictions are based.  Defendants argue they have fully responded, because they do not consider any restrictions on Hirt to remain.

Again, the parties interpret the "continuing restriction" language entirely differently.  But Plaintiffs ask *if* any continuing restrictions were based on District policy, Defendants should identify the precise policy and how it was violated.  Because Defendants have a good-faith belief that no restrictions remain, it stands to reason they cannot identify a policy.  Therefore, the Court considers the interrogatory fully answered, and Plaintiffs' motion is **DENIED** regarding Interrogatory No. 22.

### c.    Interrogatory No. 26

On November 8, 2017, Defendants' counsel sent an email counteroffer to Defendants, responding to Plaintiffs' earlier settlement offer, as required by the Scheduling Order. (ECF No. 33, at 3.)  In that email, defense counsel referred to "any other similarly-situated member of the public." (ECF No. 75-4, Ex. C, *sealed*.)

In their Interrogatory No. 26, Plaintiffs asked Defendants to "as specifically and completely as possible please explain what was meant by 'similarly-situated'" in the November 8, 2017 correspondence.  Defendants objected, stating:

> Defendants presume plaintiffs are referencing a settlement counteroffer sent by defendants' counsel to plaintiffs pursuant to the scheduling order. Defendants object to this interrogatory because it is not reasonably calculated to lead to admissible evidence. This interrogatory questions the meaning of the settlement offer, which is not admissible. See Fed.R.Civ.P. 408. Additionally, Defendants' counsel is not a party to this lawsuit. See Fed.R.Civ.P. 33. Furthermore, this interrogatory is objectionable because it invades the thought processes, mental impressions, strategies, and work product of defense counsel.

Plaintiffs argue Defendants' counsel, Mr. Pigg, has "not always been acting as counsel", and even if the email is not admissible evidence, information need not be admissible to be discoverable.

The Scheduling Orders entered by this Court, including the one entered in this case (ECF No. 33), specifically prohibit the public filing of confidential settlement reports—and by extension, the underlying settlement offers exchanged by the parties.[52] This promotes the public policy favoring the compromise and settlement of disputes,[53] in line with Fed. R. Evid. 408, which generally prohibits the use of settlement offers as evidence. Although settlement negotiations may be admitted for some other purpose, such as proving bias, negating a contention of undue delay, or proving obstruction,[54] none of these situations are evident here.

And, though information need not be admissible to be discoverable,[55] the Court does not find the relevance of these documents to be apparent on the face of the interrogatory. Plaintiffs have not carried their burden, as the propounding party, to demonstrate how counsel's use of "similarly-situated" in its counteroffer is relevant to the claims or defenses in this case.[56]

---

[52] Therefore, the undersigned U.S. Magistrate Judge has sealed the email in ECF No. 75-4, Ex. C, from public view, and the document is accessible only by the parties to this case.

[53] *See* Fed. R. Evid. 408 advisory committee note to 1972 proposed rule.

[54] Fed. R. Evid. 408(b).

[55] *Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 615-16, 624 (D. Kan. 2005); *see also Gilmore v. L.D. Drilling, Inc.*, No. 16-2416-JAR-TJJ, 2017 WL 3116576, at *1 (D. Kan. July 21, 2017).

[56] *Gilmore*, 2017 WL 3116576, at *2 (citing *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586 (D. Kan. 2008)).

Even if the information were discoverable or admissible, Plaintiffs bear a responsibility to "exercise reason and common sense to attribute ordinary definitions to terms utilized in"[57] discovery.  When read in the context of the email, it should be apparent to Plaintiffs what the term references.

Finally, the Court dismisses Plaintiffs' argument that defense counsel was somehow acting outside his scope as counsel when sending the email on Defendants' behalf.  Such an email is precisely the type of activity counsel engages in, on behalf of their clients.  Nothing Plaintiffs submitted in their briefing demonstrates counsel was acting outside the scope of his representation, and directing a discovery request to counsel, rather than a party, is inappropriate under Fed. R. Civ. P. 33.

In light of the above, the Court finds Interrogatory No. 26 is an improper question to counsel and lacks relevance on its face.  Defendants' objections are upheld, and Plaintiffs' motion is **DENIED** regarding Interrogatory No. 26.

### 3.   Fourth Requests for Production

In addition to the disputed interrogatories and requests for admission, two requests for production of documents ("RFPs") remain at issue.

### a.   RFP No. 7

The first Request disputed by the parties is RFP No. 7, in which Plaintiffs ask Defendants to produce "Documentation for each visitor's pass issued during calendar years 2012-2015."  Defendants responded with the following objections:

---

[57] *Cf. Pulsecard, Inc.*, 168 F.R.D. at 310 (addressing a party's response to discovery and objection to discovery as vague or ambiguous).

Objection. This request is not relevant to either party's claim or defense and is not proportional to the needs of the case. Further, this request is vague and ambiguous as to the "documentation for each visitor's pass." The documents encompassed by this request contain protected student information retained during educational hours. Additionally, this request seeks records that are protected from disclosure by the Family Educational Rights Act (FERPA). This request also seeks confidential identifying information including the names of the students, where and when the students are enrolled, the names of families/guardians of the students, and the personal reasons students are entering or exiting the schools. Additionally, this request is overly broad and unduly burdensome as it requires defendants to review daily visitor's logs during a three-year period to identify students contained in the logs. Consistent with Fed.R.Civ.P. 34(b)(2)(C), materials responsive to this request are being withheld on the basis of the foregoing objections.

Each of Defendants' objections are addressed in turn.

First, with regard to relevance, Defendants present a similar argument to that addressed above in Section II regarding futility of amendment[58]: that the school is not a speech forum at all, so whether (or how, or why) a visitor enters the school building has no bearing on Plaintiffs' alleged First Amendment rights. (ECF No. 86 at 8.) But, as discussed above, Plaintiffs possess at least a colorable argument that the objective characteristics of the school property, and how the District has utilized the property, are relevant to show whether it is a public forum, a nonpublic forum, or no speech forum at all.[59] The visitor logs could demonstrate when and why visitors are permitted to enter school property, which would provide the parties with objective evidence of the use of the property.

---

[58] *See* discussion *supra* Section II.B.1, p. 9.

[59] *First Unitarian*, 308 F.3d at 1124 (citing *Forbes*, 523 U.S. at 677) (quoting *Perry Educ. Ass'n*, 460 U.S. at 45))).

Finding the information at least minimally relevant, the Court turns to whether release of the information contained in the visitor logs is prevented under the Family Education Rights and Privacy Act of 1974 ("FERPA").[60]  Plaintiffs initially argued the District is not obligated to comply with FERPA, but after Defendants responded the District is, in fact, required to do so, the Plaintiffs appear to abandon their argument regarding the electiveness of FERPA, and instead contend FERPA exceptions should apply.

It is well-established that compliance with FERPA is mandatory for any federally-funded educational institution.[61]  FERPA generally prohibits disclosure of certain student records, providing that:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information . . . ) of students without the written consent of the parents to any individual, agency, or organization . . . [62]

Relative to this case, there are two methods by which some, or all, of any FERPA-governed information could be released:   1) if the information sought is "directory information"; or 2) if the information is released pursuant to a court order.  First, FERPA defines "educational records", which may not be released, as "those records, files,

---

[60] 20 U.S.C. § 1232g.

[61] *Interscope Records v. Does 1-14*, 558 F. Supp. 2d 1176, 1180–81 (D. Kan. 2008) (citing 20 U.S.C. § 1232g).  The Court takes defense counsel at their word, as officers of the Court, that the District receives federal funding.  Additionally, the Court notes the District's budget is publicly available and includes federal funds as one revenue source.  *See* "Budget at a Glance" for U.S.D. 287, available online at http://www.usd287.org/Home/boe.

[62] *Id*. (citing 20 U.S.C. §§ 1232g(a) and (b)(1)).

documents, or other materials which (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution."[63] But FERPA excludes "directory information" from these privacy requirements, including information such as "the student's name, address, telephone listing, date and place of birth . . . participation in officially recognized activities . . . , [and] dates of attendance . . . "[64]  Therefore, parental consent to the release of directory information is unnecessary under FERPA.

Second, FERPA "expressly provides that protected information may be disclosed pursuant to court order."[65] However, the disclosure is conditioned upon pre-disclosure notification of parents and students.[66]

Plaintiffs contend all student information contained in the visitor logs amounts to directory information, which is *not* protected by FERPA.  Defendants argue the identification of students, and their entrance or exit from school, amount to attendance records, which are educational records protected by FERPA.  But regardless of whether a student's name or reasoning for entering or leaving the school equates to an "education record" prohibited from disclosure—and the Court does not reach this issue—the school may disclose educational records without consent if the disclosure is to comply with a judicial order.[67]  Therefore, if ordered by this Court, the school could disclose the entire

---

[63] *Id*. (citing 20 U.S.C. § 1232g(a)(4)(A); *United States v. Miami University*, 294 F.3d 797, 812 (6th Cir. 2002)).

[64] *Id.* (citing 20 U.S.C. § 1232g(a)(5)(A)).

[65] *Id.* (citing *Warner Bros. Records Inc. v. Does 1–6*, 527 F.Supp.2d 1, 3 (D.D.C. 2007) (citing 20 U.S.C. § 1232g(b)(2)(B)).

[66] 20 U.S.C. § 1232g(b)(2)(B).

[67] *See C.T. v. Liberal Sch. Dist.*, No. 06-2093-JWL, 2008 WL 394217, at *4 (D. Kan. Feb. 11, 2008) (citing *D.L. v. Unified Sch. Dist. No. 497*, 270 F. Supp. 2d 1217, 1243–44 (D. Kan. 2002),

log, without redaction, so long as the District complies with FERPA's requirement to notify the students and their parents prior to disclosure.[68]

Plaintiffs argue this Court's Scheduling Order necessitates discovery, which should suffice as a court order requiring disclosure (ECF No. 75, at 12). This Court disagrees with this oversimplification. The privacy protection afforded by FERPA requires more than simply a generic order permitting discovery.

Plaintiffs contend visitor logs regarding non-students are not protected, and any other information Defendants seek to protect—such as the personal reasons each visitor entered the school, or the names of family members or guardians of students listed on the logs—could be sufficiently protected with a protective order, restricting the use of the information in the logs to the present litigation. Defendants concede the names of family members and guardians, as well as the reasons for their visits, would not be protected by FERPA.

Because the information is at least minimally relevant, all student information could be produced pursuant to court order, and non-student information is generally not protected, the Court sees little legal barrier to ordering the information produced based on the nature of the information itself. Other courts in this district have permitted similar disclosure of educational and "otherwise confidential information" "without running afoul of FERPA so long as the school district notifies the parent or student of the disclosure and a protective order restricts the use of such information to this litigation

---

*vacated on other grounds by D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223 (10th Cir. 2004) (quoting 34 C.F.R. § 99.31(a)(9)(I)) (other internal citations omitted)).
[68] 20 U.S.C. § 1232g(b)(2)(B).

only."[69] However, even though Plaintiffs' request appears relevant on its face, and privacy concerns can be cured with the appropriate court orders, the Court is concerned with the facial overbreadth of the request and the burden placed on Defendants to comply with the request as written.

Defendants argue the request is unduly burdensome and not proportional to the needs of the case. They contend Plaintiffs' request encompasses "approximately 460 pages of visitor logs from 2012 to 2015, and each contains anywhere from 16 to 44 entries per sheet." (ECF No. 86, at 10.) Defendant Turner's Declaration claims it would take a "minimum of four weeks" for District employees to review the logs and redact student information from them, which would significantly detract from their job duties.[70]

Plaintiffs claim the request is sufficiently narrow because "it isolates a specific narrow topic and a specific timeframe." (ECF No. 75, at 11.) Plaintiffs suggest there would be little burden to Defendants if they simply copy the logs, without redaction, under a protective order. The Court agrees that the burden of production is reduced when the duty to redact is removed; however, the Court finds the request is overly broad on its face. Plaintiffs do not address the temporal scope of the request to explain why the three-year timeframe for records was requested, or how those three years relate to the claims in this case. Nor do Plaintiffs address the number of schools the request covers.

Defendants claim it would require six secretaries from various schools to work on the request, and included in an exhibit to Plaintiffs' Reply brief is a list of six schools

---

[69] *C.T. v. Liberal Sch. Dist*, 2008 WL 394217, at *4 (*citing D.L.*, 270 F. Supp. 2d at 1244).
[70] *See* Turner Decl., ECF No. 86-1, Ex.1.

(ECF No. 87-2, Ex. A).  So, the Court infers for the sake of this order that the District is comprised of six school buildings, each of which maintains its own visitor logs.  And, although Defendants do not address this aspect of potential burden, the Court notes any unredacted logs produced pursuant to this order which specifically identify student information will require pre-notification of the identified student(s) and their parents, placing added burden on Defendants.[71]

Although the subject matter of the request appears facially relevant, and privacy concerns can be cured by a combination of this order and a protective order, the broad temporal scope and failure to identify individual schools creates issues of overbreadth and corresponding undue burden to Defendants.  Consequently, the Court will order some production, but will impose reasonable limits on that production.

The Court finds disclosure of visitor logs for the period of one year—beginning six months prior to Hirt's initial prohibition from District property on July 13, 2015, and ending six months following that date—will sufficiently demonstrate the District's utilization of its public schools.  Additionally, rather than impose a duty to respond on each of the six buildings, the request is narrowed to the two schools from which Hirt has previously been barred: Appanoose Elementary School and Williamsburg Elementary School.[72]  No redactions to the visitor logs are necessary; however, the logs must be produced only pursuant to a protective order to be approved by the undersigned U.S. Magistrate Judge.

---

[71] *See* 20 U.S.C. § 1232g(b)(2)(B).
[72] *See* Defs.' Resp. to Pls.' Interrog. No. 17, *supra* Section III.B.5.

The parties are to confer, using their best efforts to agree upon a jointly proposed protective order, and submit the proposed order to the chambers of the undersigned at ksd_birzer_chambers@ksd.uscourts.gov, **no later than April 27, 2018**.  This proposed protective order should be drafted in strict compliance with the guidelines and pre-approved form available on the Court's website[73] in an effort to avoid any conflict.  At a minimum, such proposed order must include a concise but sufficiently specific recitation of the particular facts in this case that would provide the Court with an adequate basis upon which to make the required finding of good cause pursuant to Fed. R. Civ. P. 26(c).  The protective order must also include language which mandates any information which identifies students or their parents, who are not parties and have clearly not consented to release of their personal information, is not to be disclosed or used by any party, for any reason not specifically in conjunction with this case, and this case only.  Any future use of the information from the logs which includes individuals not parties to this action should be sealed from public view.

If the parties disagree concerning the scope or form of the protective order, the parties must file an appropriate motion and supporting memorandum, with the proposed protective order attached, by **no later than April 27, 2018**.  However, with the guidelines included herein, the Court will not look favorably upon the parties' inability to come to agreement on the terms of the protective order.

---

[73] Guidelines for Agreed Protective Orders for the District of Kansas.  A pre-approved form of protective order is available at http://ksd.uscourts.gov/index.php/forms/?open=CivilForms.

In the Court's discretion as permitted under Fed. R. Civ. P. 26(c)(1), the Court **ORDERS** that no party or its representative is permitted to contact the non-parties listed on the visitor logs without first seeking Court permission and sufficiently demonstrating the relevance and necessity of such contact.[74]

Therefore, as set forth above, Plaintiffs' Motion is **GRANTED in part and DENIED in part** with respect to **RFP No. 7.**  Defendants are ordered to respond to RFP No. 7 as narrowed by the Court above, and the parties must submit a proposed protective order which will govern the responses, as well as any other similar information disclosed in the course of discovery.

### b.     RFP No. 8

Plaintiffs' RFP No. 8 is a follow-up to Defendants' earlier response to Plaintiffs' Interrogatory No. 5.  In Defendants' interrogatory response, they provided documents that "contain notations of unusual activity on school property," including notations concerning persons not parties to this case.  In RFP No. 8, Plaintiffs ask Defendants to "provide documents containing any such notations which were created or recorded during calendar years 2012-2015."  Defendants both objected and responded as follows:

> Objection. This request seeks documents that are not relevant to any party's claim or defense and is not proportional to the needs of the case. Additionally, this request seeks confidential identifying information including the names of students, parents and other visitors, and the personal matters involving those individuals.  Without waiving the objections, defendants redact the confidential identifying information and provide Bates Nos. D1443-D1446.

---

[74] This requirement excludes the District's necessary notification to those students and/or parents as required by FERPA.

Defendants contend they provided the information to Plaintiffs regarding unusual activity on school property, but "redacted the names of the public who were identified in the documents." (ECF No. 86, at 10.)  Defendants argue public identification of non-parties to this case, and the potentially embarrassing behavior committed by those non-parties, lacks relevance to either party's claim or defense. Defendants also maintain Plaintiffs intend to name these individuals as witnesses, which Defendants believe is inappropriate. Defendants maintain Plaintiffs cannot use the conduct of others to prove their First Amendment rights have been violated, because the conduct of others is "wholly separate and distinct from Mr. Hirt's conduct following a board meeting" (ECF No. 86, at 11.)

Plaintiffs claim the notations of unusual activity and actions taken against Hirt and others is relevant, not only to the defense, but to Hirt's equal protection claim. They also contend the information is "directly relevant to policies and customs of the district related to a First Amendment cause of action." (ECF No. 75, at 14.)

Although the Court finds the relevance of this information questionable regarding the First Amendment claims, Plaintiffs are also pursuing an equal protection claim. (*See* 2nd Am. Compl., ¶ 59.)  And, even after the 2015 amendment of Fed. R. Civ. P. 26(b), relevance is still to be construed broadly.[75] If the request appears to seek relevant information, on its face, the objecting party bears the burden to demonstrate a lack of relevancy by showing "that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy

---

[75] *Rowan v. Sunflower Elec. Power Corp.*, No. 15-CV-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (citing *Gen. Elec. Cap. Corp. v. Lear Corp.,* 215 F.R.D. 637, 640 (D. Kan. 2003)).

that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."[76]

Defendants' sole argument is that identification of the non-party individuals lacks relevance; however, Defendants did not address Plaintiffs' equal protection claim and how the identification of those individuals lacks relevance to that claim.   Because Defendants did not address the issue, the Court finds Defendants failed to meet their burden to demonstrate lack of relevancy.   That said, the Court interprets Defendants' objection as actually an objection based on privacy concerns.   However, privacy does not equate to privilege[77], and the protective order discussed above will shield any non-parties from public disclosure.

Therefore, Defendants' objections are overruled, and Plaintiffs' motion is **GRANTED** regarding RFP No. 8.   Defendants must submit unredacted copies of their Bates Nos. D1443-D1446 to Plaintiffs *after* entry of the protective order discussed above. However, as previously ordered, under Fed. R. Civ. P. 26(c)(1), the Court **ORDERS** that no party or its representative is permitted to contact the non-parties named in Bates Nos. D1443-D1446 without first seeking Court permission and sufficiently demonstrating the necessity of such contact.

---

[76] *Id*. (citing *Gen. Elec.*, 215 F.R.D. at 640).

[77] *See Sonnino v. Univ. Kansas Hosp. Auth.*, 220 F.R.D. 633, 642 (D. Kan.), *on reconsideration in part sub nom. Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661 (D. Kan. 2004) ("It is well settled that a concern for protecting confidentiality does not equate to privilege, and that information and documents are not shielded from discovery on the sole basis that the they are confidential.")

### C.   Conclusion on Motion to Determine Sufficiency of Answers (ECF No. 74)

For the reasons stated above, Plaintiffs' Motion to Determine the Sufficiency of Answers and Objections (**ECF No. 74**) is **GRANTED in part and DENIED in part**.

## V.   Expenses under Fed. R. Civ. P. 37(a)(5)

Pursuant to Rule 37(a)(5), if a motion to compel is granted, the court must require the party whose conduct necessitated the motion to pay expenses incurred in making the motion unless circumstances make such an award unjust.  If such a motion is denied, the court must require the movant to pay the opposing party its reasonable expenses.[78] Here, Plaintiffs' motions were both denied and granted in part.  No party addresses the issue of fees in their briefing.  Under these circumstances, the Court finds it appropriate and just for the parties to bear their own expenses incurred relating to the motions to compel.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 3rd day of April, 2018.

  s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge

---

[78] Fed. R. Civ. P. (37(a)(5)(B).