IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GENE HIRT and ERIC S. CLARK,           )
                                        )
            Plaintiffs,              )
                                        )
v.                                      )     Case No. 17-2279-HLT-GEB
                                        )
UNIFIED SCHOOL DISTRICT NO. 287, et al.,)
                                        )
            Defendants.              )
                                        )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Compel Discovery Responses and Answers ("Motion") (**ECF No. 120**). The Court has considered Plaintiffs' Motion and Brief in Support (ECF No. 121) and Defendants' Response in Opposition to Plaintiffs' Motion (ECF No. 126). For the reasons set forth below, Plaintiffs' Motion is **GRANTED IN PART AND DENIED IN PART.**

### I.    Background

#### A.    Nature of the Case

Detailed information regarding the factual background and procedural posture of this case can be found in previous orders[1] and will only be repeated summarily here. As set forth the in Third Amended Complaint,[2] Plaintiffs bring this lawsuit against their local school district, Unified School District No. 287 (District), and Superintendent Jerry Turner

---

[1] *See* ECF Nos. 41, 92 and 122.
[2] ECF No. 93.

alleging violations of their Constitutional rights per 42 U.S.C. § 1983, and violations of the Kansas Open Meetings Act[3] and the Kansas Open Records Act.[4]  Plaintiffs' claims stem from a July 13, 2015 letter sent to Mr. Hirt by Mr. Turner.[5]  The letter informed Mr. Hirt he would no longer be allowed on District property because of his inability on prior occasions to express himself "in a civil and socially acceptable manner."[6]

The initial Scheduling Order in this case was entered on September 26, 2017.[7]  As pertinent here, it states no party may serve more than 60 interrogatories, including all discrete subparts, on any other party.[8]  During that scheduling conference, the parties advised the Court of the rationale for propounding interrogatories in excess of the 25-limit allotted by Fed. R. Civ. P. 33(a)(1).[9]  The Scheduling Order also set a discovery completion deadline of July 1, 2018.[10]  As such, the Court notes discovery is now closed.

**B.    Plaintiffs' Motion to Compel Discovery Responses and Answers (ECF No. 120)**

This Motion, which is Plaintiffs' fourth motion to compel, involves Plaintiffs' Tenth Set of Interrogatories and Tenth Set of Requests for Admissions, which were served on May 21, 2018 and answered by Defendants on June 20, 2018.[11]  Plaintiffs ask this Court to compel complete answers to Request for Admission Nos. 31 and 32 and Interrogatory Nos.

---

[3] K.S.A. § 75-4317, *et seq.*
[4] K.S.A. § 45-215, *et seq.*
[5] *See* Third Amended Complaint, ¶¶ 13-14 (ECF No. 93).
[6] *See* July 13, 2015 letter attached as Ex. A to the Third Amended Complaint (ECF No. 93-1).
[7] ECF No. 33.
[8] *Id.* at p. 8, ¶ 2(k).
[9] Fed. R. Civ. P. 33(a)(1) states "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."
[10] ECF No. 33, p. 5 at ¶ 2(d).
[11] *See* ECF Nos. 110 and 116.

49, 50, and 52 through 56. Defendants argue they sufficiently answered Request for Admission Nos. 31 and 32 and Interrogatory Nos. 49 and 50. But they objected to answering Interrogatory Nos. 52 through 56 on the ground that Plaintiffs reached their 60-interrogatory limit, and also on the basis of relevancy for Interrogatory Nos. 53 and 54.

## II. Duty of Confer

Pursuant to D. Kan. Rule 37.2, this Court "will not entertain any motion to resolve a discovery dispute" unless counsel, or in this case, the moving party, "has conferred or has made reasonable effort to confer with opposing counsel" before filing a motion. Plaintiffs' Motion states they conferred via email and telephone with defense counsel regarding their concerns with Defendants' responses and objections to the discovery requests at issue herein. The parties, however, were unable to resolve their disputes. Based on these interactions, the Court is satisfied Plaintiffs and defense counsel have adequately conferred as required by the above-cited rule.

## III. Discussion

### A. Requests for Admission

Rule 36 provides the standards for requests for admission. This rule "allows a party to serve on another party a written request to admit 'the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents.'"[12]

The rule includes precise requirements for a party's answers to such requests:

---

[12] *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-1094-JTM-TJJ, 2017 WL 1408226, at *1 (D. Kan. Apr. 20, 2017) (quoting Fed. R. Civ. P. 36(a)(1)).

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.[13]

"Requests for admission serve 'two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be [eliminated].'"[14] The primary purpose of a request for admission is "not to discover additional information concerning the subject of the request, but to force the opposing party to formally admit the truth of certain facts, thus allowing the requesting party to avoid potential problems of proof."[15]

If the requesting party is dissatisfied with the opposing party's response, "the requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served."[16] The court has substantial discretion to determine the propriety of requests for admissions and the

---

[13] Fed. R. Civ. P. 36(a)(4).
[14] *Nat'l R.R. Passenger Corp.*, 2017 WL 1408226, at *1 (quoting Fed. R. Civ. P. 36 advisory committee's note to 1970 amendment).
[15] *Id.* (quoting *Solis v. La Familia Corp.*, No. 10-2400-EFM-GLR, 2012 WL 1906508, at *2 (D. Kan. May 25, 2012)).
[16] Fed. R. Civ. P. 36(a)(6).

sufficiency of the responses.[17]  And, at the core of every discovery method is the principle that the information sought must be relevant to the claims or defenses of the parties.[18]

   1.   **Request for Admission No. 31**[19]

Plaintiffs' Request for Admission No. 31 reads:

> On August 19, 2015, an Open House event was held by USD 287 at Williamsburg Elementary School ("WFEW") which was open to all members of the public except any persons who had been provided notice that the person was excluded.

In response, Defendants denied the request and stated:

> Although not specified in the notice, the Williamsburg Back to School Night/Open House Event was intended to be open only to students, families/guardians and faculty and not to "all members of the public."

Plaintiffs argue Defendants' answer does not admit or deny the statement as posed and gives no reason for why it cannot be admitted or denied.  Plaintiffs state the request for admission does not ask about who Defendants "intended" the back to school event to be open to, but rather to whom the event was "actually" open, regardless of intent.

Defendants respond they denied the request and qualified their denial in good faith. Defendants state they have previously explained in answering an earlier interrogatory[20] that the purpose of a back to school night is for parents/guardians and students to meet the teachers and school staff before the start of classes.  In providing a good faith response to

---

[17] *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. CIV.A. 94-2395-GTV, 1995 WL 625744, at *1 (D. Kan. Oct. 5, 1995).
[18] *See* Fed. R. Civ. P. 26(b)(1).
[19] The discovery requests and responses at issue are reproduced in full as attachments to Plaintiffs' Brief in Support of their Motion (ECF No. 121, Exhibits A-B).  All discovery requests and responses recited herein are taken from these exhibits unless otherwise indicated.
[20] *See* Defendants' supplemental answer to Plaintiffs' Third Set of Interrogatories, ¶ 14, attached as Ex. A to Defendants' response brief (ECF No. 126-1).

Request for Admission No. 31, Defendants argue they acknowledged the notice did not specifically limit the intended participants, but explained they did not intend for "all members of the public" to attend the school event.

The Court agrees and finds Defendants sufficiently answered Request for Admission No. 31 by denying the request and qualifying the denial in good faith as allowed by Rule 36(a)(4). Plaintiffs' Motion is therefore **DENIED** regarding Request for Admission No. 31.

### 2. Request for Admission No. 32

Plaintiffs' Request for Admission No. 32 provides:

> During the August 19, 2015 pubic event held by USD 287 at Williamsburg Elementary School ("WFEW"), the public was allowed to visit within the school building without securing or wearing a visitor's pass.

Defendants responded as follows:

> Although not specified in the notice, the Williamsburg Back to School Night/ Open House Event was intended to be open only to students, families/guardians and faculty and was not a public event open to all members of the public. It is admitted those intended visitors were allowed to visit on August 19, 2015 without securing or wearing a visitor's pass.

Plaintiffs' issue with this response is the same as above. Plaintiffs argue the request does not ask for an admission about intended visitors, but rather seeks an admission about visitors that were "actually" allowed. Defendants respond they sufficiently answered the request by again explaining they did not intend for "all members of the public" to attend the back to school night and by admitting what they could, *i.e.*, the intended visitors were allowed to visit the school without wearing a visitor's pass.

The Court agrees and finds Defendants sufficiently answered Request for Admission No. 32 per Rule 36(a)(4). Defendants explained why they could not admit or deny the request as written and proceeded to specifically admit what they felt they could. Plaintiffs' Motion is therefore **DENIED** regarding Request for Admission No. 32.

## B.   Interrogatories

This Court recently set out guidelines for appropriate interrogatory practice in its July 20, 2018 Order[21] ruling on Plaintiffs' third motion to compel and, for the sake of brevity, will not repeat those directives in this Order, but will refer to them as appropriate in the below analysis of the interrogatories at issue here.

### 1.   **Interrogatory No. 49**

Interrogatory No. 49 asks:

> Specifically identity [sic] as distinctly as possible each and every "normal educational function" as that term is used in USD 287 policy KGDA for which it is alleged that Mr. Hirt disturbed or disrupted the "normal educational function."

Defendants answered as follows:

> Mr. Hirt was driving through the school parking lots during school hours on the dates provided in Bates No. 788-792. Mr. Hirt was diverting resources away from daily educational functions. Specifically, Mr. Hirt's behavior caused the Superintendent, Mr. Turner, to address the unauthorized behavior and handle calls from staff reporting the behavior.
>
> On 2/26/15, Mr. Hirt was not authorized to be in the 5th grade classroom during school hours. Mr. Hirt's attendance was a disruption to the classroom.
>
> On 3/25/15, Mr. Hirt did not have permission to bring a photographer to school and became angry when he was denied access. The staff had to address Mr. Hirt's behavior, which was interfering with the daily educational

---

[21] *See* ECF No. 122, at pp. 4-5.

process of the school; Mr. Hirt was diverting resources away from the students.

On 4/2/15, when Mr. Hirt was denied access to the school, he became angry. Mr. Hirt's behavior frightened the staff and caused them to address his behavior rather than focusing on the operation of the school and the students' educational needs.

On 4/13/15; 5/1/15; 6/8/15; and 7/13/15 Mr. Hirt's [sic] disrupted board meetings. Mr. Hirt was heard cussing at board members, calling them "sons of bitches" and stating "they are a bunch of bullshit."

On 7/16/15 Mr. Hirt entered the district office and yelled at Mr. Turner in a threatening voice because Mr. Hirt was not satisfied with documents he received in response to an open records request. Mr. Hirt's behavior was disruptive and concerning to the staff, including Mr. Turner. Mr. Turner was forced to tell Mr. Hirt to calm down or Mr. Turner would have to call the Sheriff's office. Mr. Hirt's behavior diverted resources away from the daily educational process of the school by causing Mr. Turner to deal with Mr. Hirt's aggressive behavior.

Plaintiffs argue Defendants failed to answer the question as posed. Plaintiffs state Defendants' answer failed to identify as distinctly as possible each and every "normal educational function" as requested in the interrogatory. Defendants contend they sufficiently answered the interrogatory by identifying Mr. Hirt's disruptive conduct and explaining how his conduct was disruptive to the "normal educational function" of the school. In support, Defendants state their response explains that Mr. Hirt's conduct on school property forced school personnel to divert their attention away from operating schools and educating students, to address school safety concerns, and to conduct school board meetings, which are all normal educational functions as that term is used in USD 287 policy KGDA.

The Court believes this interrogatory has been asked and answered on at least two prior occasions. For instance, subpart (d)(iii) of Plaintiffs' Interrogatory No. 38, in pertinent part, asked: "[I]f Mr. Hirt violated policy KGDA for acting disruptive or disturbing normal educational functions **then identify the specific normal educational function(s) which was/were disrupted or disturbed**."[22] And, Plaintiffs' Interrogatory No. 46, in relevant part, asked: "**Please identify every 'specific'** 'school activity,' 'educational process,' and **'normal educational function' for which Mr. Hirt either interfered, disrupted, or disturbed** . . . ."[23]

Just as the Court found Defendants' responses to those interrogatories sufficiently answered the question of which "normal educational functions" Mr. Hirt allegedly disrupted,[24] the Court also finds Defendants' answer to Interrogatory No. 49 sufficient. In their answer, Defendants identify the following tasks, among others, as normal educational functions: accessing school property during school hours; operating schools; educating students; ensuring the safety of students, staff and faculty; and conducting school board meetings. To the Court, these appear to be appropriate responses.

Furthermore, the Court views this interrogatory as another example of the improper interrogatories referenced in its July 20, 2018 Order.[25] Despite receiving the same answer

---

[22] *See* July 20, 2018 Order, at p. 7 (ECF No. 122) (emphasis added).
[23] *See id.* at pp. 8-9.
[24] *See id.* at pp. 7-9.
[25] *See* ECF No. 122, at pp. 4-11 (interrogatories "should be objective and nonargumentative" and "should not seek narrative answers or attempt to argue, cross-examine, or impeach"; the "discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know") (internal citations omitted).

9

from Defendants on multiple occasions regarding the "normal educational functions" Mr. Hirt allegedly disturbed or disrupted, Plaintiffs continue to ask the same question, perhaps in hopes of receiving a different answer.[26] It is excessive and burdensome to make Defendants answer the same question multiple times, and the Court declines to require Defendants to do so.[27]

For the reasons stated above, Plaintiffs' Motion is **DENIED** regarding Interrogatory No. 49.

### 2. Interrogatory No. 50

Interrogatory No. 50 asks:

> For each specific "normal educational function" identified in answer to Interrogatory No. 50 [sic] above, identify specifically what about the "normal educational function" was disturbed or disrupted and approximate duration of the disruption or disturbance.
>
> Sample answer for example only:
> **normal educational function:** "accessing school parking lots during school hours"
> **disruption:** "prevented a student from ability to access the school parking"
> **duration:** "approximately 10 minutes"[28]

Defendants answered:

> See response to Plaintiffs' Interrogatory No. 49, explaining what about the normal educational function was disturbed or disrupted. Defendants do not

---

[26] *See, e.g., Thermal Sols., Inc. v. Imura Int'l U.S.A., Inc.*, No. 208CV02220JWLDJW, 2009 WL 10668995, at *4 (D. Kan. Dec. 4, 2009) (stating a party cannot compel another party to change an interrogatory answer because they do not agree with the answer given).

[27] *See, e.g.,* Rule 26(b)(2)(c)(i) (stating the "court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."); *Utter v. Thompson*, No. 11-2360-KHV, 2012 WL 5933043, at *2 (D. Kan. Nov. 27, 2012) (denying request to compel a complete answer to an interrogatory because it was unnecessarily cumulative and duplicative under Rule 26(b)(2)).

[28] Emphasis in original.

have any documentation about the time of Mr. Hirt's behavior or the duration.

Plaintiffs take issue with Defendants' statement they "do not have any documentation about the time of Mr. Hirt's behavior or the duration." Plaintiffs argue their interrogatory does not ask about "documentation," and believe Defendants should be compelled to make a reasonable inquiry as to duration and provide an approximate duration for each disruption. Defendants respond they did make a reasonable inquiry of Mr. Turner regarding the duration of the disruptions, but state Mr. Turner did not make notes regarding duration when the events happened and cannot now remember the duration of events occurring three years ago. Any answer regarding duration, Defendants argue, would be mere speculation on their part.

The Court finds Defendants sufficiently answered Interrogatory No. 50. Defendants state they made a reasonable inquiry regarding duration, but simply cannot provide a non-speculative answer.[29]

The Court further believes the substance of this interrogatory has been asked and answered on at least two prior occasions, and like Interrogatory No. 49 is yet another example of an improper interrogatory as described in the July 20, 2018 Order.[30]

---

[29] *See, e.g., Firestone v. Hawker Beechcraft Int'l Serv. Co.*, No. 10-1404-JWL, 2011 WL 13233153, at *6 (D. Kan. Sept. 28, 2011) (finding plaintiff's answer he was "unaware" of any responsive information met the duty to make a reasonable inquiry because the most likely source of responsive information was plaintiff's memory, which reflects the reality that he might not remember everything responsive to the interrogatory); *United States v. Black*, No. 11-2475-CM, 2013 WL 11350357, at *2 (D. Kan. May 9, 2013) (finding defendant satisfied its duty to make a reasonable inquiry and provide a complete response to plaintiffs' interrogatories).
[30] *See supra* notes 25-27 and accompanying text.

For instance, in subpart (c) of Interrogatory No. 12, Plaintiffs asked Defendants to identify the "extent and duration" of Mr. Hirt's alleged disruptions at the board of education meetings.[31] Defendants answered they had "no recollection of the duration of Mr. Hirt's disruptions during board meetings."[32] As they do here, Plaintiffs questioned the sufficiency of Defendants' answer regarding duration.[33] This Court denied Plaintiffs' motion to compel regarding Interrogatory No. 12 by stating: "If Plaintiffs do not agree with the Defendants' contention that they do not recall the duration of these events, they can take that factual dispute up at a later stage of the litigation [perhaps at trial]. But Plaintiffs cannot compel Defendants to change their answer 'simply because they don't agree.'"[34] The Court echoes those remarks for Interrogatory No. 50.

Additionally, at Interrogatory No. 46, Plaintiffs asked:

> Please identify every "specific" "school activity," "educational process," and **"normal educational function"** for which Mr. Hirt either interfered, disrupted, or disturbed **and for each instance that Mr. Hirt disrupted, disturbed, or interfered those specific activities, processes and functions, identify as the approximate date, time, and duration** and as specifically as possible, who and what was disrupted, disturbed, or interfered with, and how did Mr. Hirt cause it.[35]

Regarding duration, Defendants answered Interrogatory No. 46 the same way they answered Interrogatory No. 50, by stating they did "not have any documentation about the

---

[31] *See* April 3, 2018 Memorandum and Order, at p. 18 (ECF No. 92).
[32] *Id*.
[33] *Id*. at 19.
[34] *Id.* (quoting *Thermal Sols., Inc.,* 2009 WL 10668995, at *4).
[35] *See* July 20, 2018 Order, at pp. 8-9 (ECF No. 122) (emphasis added).

time of Mr. Hirt's behavior or the duration."[36] To the Court's knowledge, Plaintiffs did not take issue with Defendants' answer to Interrogatory No. 46 regarding duration.[37] Instead, Plaintiffs appear to be using Interrogatory No. 50 to ask the same question in a different way, seemingly in hopes of receiving a different response. If so, proceeding in this fashion is unnecessarily cumulative, duplicative and burdensome.[38] Defendants will not be compelled to provide a different answer to Interrogatory No. 50.

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion as it relates to Interrogatory No. 50.

### 3. Interrogatory No. 53

This Interrogatory asks:

Are Williamsburg Elementary (WFEW) and the High School (WFHS) each located on the main thoroughfare in their respective cities without any fencing or other continuous structure, between the buildings and the thoroughfare?

Defendants objected to answering the question on two grounds: (1) Plaintiffs have exceeded the number of interrogatories allowed by the Scheduling Order; and (2) the interrogatory is not relevant to any party's claims or defenses. Plaintiffs argue they are within the number of allowable interrogatories and the interrogatory is relevant because their First Amendment claims require analysis of the type of "speech forum" at issue.

---

[36] *See* Defendants' Response in Opposition to Plaintiffs' Motion to Compel Answers to Interrogatories, at p. 6 (ECF No. 108).
[37] Defendants served their answer to Interrogatory No. 46 on May 18, 2018 (ECF No. 107). Plaintiffs have not filed a motion to compel regarding this answer and their time for doing so has expired, meaning Plaintiffs have likely waived any objection to this answer. *See* D. Kan. Rule 37.1(b) (stating a motion to compel discovery must be filed and served within 30 days of service of the answer or any objection to the answer is waived).
[38] *See supra* notes 25-27 and accompanying text.

Defendants respond the speech forum at issue here is school property, not public sidewalks and "main thoroughfares," making the interrogatory irrelevant to any party's claims or defenses.

When the relevance of an interrogatory is not apparent on its face, the burden to show relevancy falls with the party seeking the discovery.[39] In this Court's view, Plaintiffs have not met their burden to show how Defendants' answer to whether the schools are located on main streets without any fencing or other structures between the schools and main streets is relevant to their First Amendment claims. The Court further notes this interrogatory appears to seek information Plaintiffs can obtain from public records if they deem it necessary for their case.[40] Therefore, this Court **DENIES** Plaintiffs' Motion as it relates to Interrogatory No. 53.

4. **Interrogatory No. 54**

This interrogatory asks:

Defendants admitted, in Admission #2, that "the purpose of the open House is to allow students and their families to meet the school staff." Defendants later averred, in their supplemental (12/2017) answer to Interrogatory #14, that "the terms 'families' and 'guardians' refer to those adults who are responsible for school-aged children attending Williamsburg Elementary School" and that for "the Williamsburg Back to School Night/Open House event, which occurred on August 19, 2015, the intended participates are

---

[39] *See, e.g., Firestone,* 2011 WL 13233153, at *5 ("The proponent of a discovery request must, in the first instance, show the relevance of the requested information to the claims or defenses in the case. In many instances, relevance is apparent on the face of the request because relevance is liberally construed in discovery. When relevancy is not readily apparent, the proponent has the burden of showing the relevance of the discovery request.").

[40] *See, e.g., McKellips v. Kumho Tire Co*., 305 F.R.D. 655, 680 (D. Kan. 2015) ("It is well established that discovery need not be required of documents of public record which are equally accessible to all parties.") (internal citations omitted).

**students, guardians, and school faculty**" which notably leaves "families" as intended participants.

Please clarify:

a) Whether the "intended participants" for "the Williamsburg Back to School Night/Open House event, which occurred on August 19, 2015" was strictly limited to **"students, guardians, and school faculty"** (references in supplemental answer to Int. No. 14) or whether the "intended participants" **also includes "families**" (as was in response to Admission No. 2)

b) Whether "families" includes more than simply adults and guardians. That is, whether "families" includes other family members who are not necessarily "responsible for school-aged children attending Williamsburg Elementary School." (e.g., a brother or a sister of such student, a grandparent that lives in the student's home, etc.)

c) Whether "students" include those children for which a parent, or other guardian, intends to enroll the child in the school but have not yet, for whatever reason, been able to submit their application for enrollment and get it approved by the school and have not yet attended the school?

d) Identify which, if any, of these following relationships to students are NOT encompassed by the meaning of "families" or would NOT be "intended participants" (as above):

mother
father
sister
brother
stepmother
step father
step sister
step brother
adopted sister
adopted brother
grandmother living in the same house as the student
grandmother not living in the same house as the student
grandfather living in the same house as the student
grandfather not living in the same house as the student
aunt living in the same house as the student
aunt not living in the same house as the student
uncle living in the same house as the student

15

> uncle not living in the same house as the student
> great aunt living in the same house as the student
> great aunt not living in the same house as the student
> great uncle living in the same house as the student
> great uncle not living in the same house as the student
> first cousins living in the same house as the student
> first cousins not living in the same house as the student
> second cousins living in the same house as the student
> second cousins not living in the same house as the student
> legal guardian
> custodial guardian (delegated custody authorized by a legal parent/guardian either for definite or indefinite duration)
> non-custodial parent
> guard *ad litem*
> current holder of "power of attorney" for the student
> official sponsor of a foreign exchange student
> ANY adult who intends to enroll a child which has never attended the school but that adult is late in getting the enrollment completed.[41]

Defendants objected to answering the question on three grounds: (1) Plaintiffs have exceeded the number of interrogatories allowed by the Scheduling Order; (2) the interrogatory is not relevant to any party's claims or defenses; and (3) the interrogatory is not proportional to the needs of the case. Plaintiffs argue they are within the number of allowable interrogatories and the interrogatory is relevant because their First Amendment claims require a "speech forum" analysis.

According to Defendants, determining whether persons are intended participants at an elementary school back to school night is wholly irrelevant to the speech forum analysis present in Plaintiffs' First Amendment claims. As stated above, when the relevance of an interrogatory is not apparent on its face, the burden to show relevancy falls with the party

---

[41] Emphasis in original.

seeking the discovery.[42] In this Court's view, Plaintiffs have not met their burden to show how determining who is a student or the position of a family member to a student for purposes of attending a back to school night is relevant to their First Amendment claims.

Additionally, the essence of this interrogatory appears to have has been asked and answered. Plaintiffs' interrogatory seems to be aimed at finding out how Defendants determined who qualified as an intended participant to the back to school night. In Interrogatory No. 14, Plaintiffs asked:

> What are all of the criteria relied upon by the District to determine whether or not someone is, or is not, an intended participant to any given public event?[43]
>
> Defendants filed a supplemental answer to this interrogatory stating:
>
> To the extent this interrogatory is asking about the Williamsburg Back to School Night/Open House event, which occurred on August 19, 2015, **the intended participants are students, guardians, and school faculty**. **The purpose of the event is for students and families/guardians to meet the faculty and visit the school**. **In the context of the Williamsburg Back to School Night/Open House event, the terms "families" and "guardians" refer to those adults who are responsible for school-aged children attending Williamsburg Elementary School**.[44]

Per this supplemental answer, the intended participants are students, guardians/families, and school faculty. Defendants clarified that "families" and "guardians" mean the adults who are responsible for school-aged children attending Williamsburg Elementary School.

---

[42] *See supra* note 39.
[43] Defendants' supplemental answer to Plaintiffs' Third Set of Interrogatories, ¶ 14, attached as Ex. A to Defendants' response brief (ECF No. 126-1).
[44] *Id.* (emphasis added).

This too is a prime example of an excessive, burdensome and borderline harassing interrogatory as described in this Court's July 20, 2018 Order.[45] This interrogatory is not a "brief, simple, direct, and unambiguous question, dealing with one point only."[46] This interrogatory is not "objective and nonargumentative."[47] Furthermore, this interrogatory is quite contrary to the principle of not "hurling interrogatories at every conceivable detail and fact which may relate to a case."[48] Moreover, as stated above, this interrogatory is unreasonably cumulative and duplicative because it has previously been sufficiently answered by Defendants.[49]

For the reasons stated above, this Court **DENIES** Plaintiffs' Motion as it relates to Interrogatory No. 54.

### 5. Interrogatory Nos. 52, 55, and 56

Interrogatory No. 52 asks:

Does USD 287 ordinarily not provide any notice of a method of appeal or any hearing to members of the public for which a trespass order is issued even when the trespass order prohibits attendance at, or speaking in person at, a future school board meeting?

Interrogatory No. 55 asks:

Please identify with "specificity of identification" any documents which are intended to provide guidance, or training, or procedures for implementing USD 287 policy KGD.

---

[45] ECF No. 122, at pp. 4-11.
[46] *Id.* at pp. 4-5 (citing *Hilt v. SFC Inc.*, 170 F.R.D. 182, 186-187 (D. Kan. 1997)).
[47] *Id.*
[48] *Id.*
[49] In their brief, Plaintiffs state that if Defendants "had properly responded to Admission Nos. 31and 32, then this interrogatory might be somewhat duplicative" (ECF No. 121, at p. 10). As stated in Section III.A., this Court finds Defendants' responses to those Requests for Admissions sufficient and for that reason and the reasons stated this this section, views Interrogatory No. 54 as unreasonably cumulative and duplicative. *See supra* notes 26-27 and accompanying text.

And, Interrogatory No. 56 asks:

Please identify with "specificity of identification" any documents which are intended to provide guidance, or training, or procedures for implementing USD 287 policy KGDA.

Defendants objected to answering these interrogatories on the grounds they exceed the 60 interrogatories allowed by the Scheduling Order. Plaintiffs argue they are within the allowed number of interrogatories.

Instead of getting bogged down in the technicalities of counting interrogatories and their various subparts, this Court feels justice is better served by ensuring that all litigants, pro se and represented, get the information they legitimately need to prosecute or defend their case.[50] And, although the Court has made clear its view that some of Plaintiffs' interrogatories in this case are improper, it believes in the importance of resolving cases on the merits and not denying legitimate discovery based on technicalities.[51]

---

[50] *See, e.g., Bolton v. Sprint/United Mgmt. Co.*, No. 05-2361-JWL, 2007 WL 756644, at *1 (D. Kan. Mar. 8, 2007) (in keeping with the general mandate of Fed. R. Civ. P. 1, Court declined to rule on motion to dismiss based on a procedural technicality, and proceeded to address the merits of the motion); *Wright v. Barrett*, No. CIV.A. 96-2107-JWL, 1998 WL 460258, at *2 (D. Kan. Aug. 4, 1998) (law favors a policy to give litigants their day in court); Fed. R. Civ. P. 1 (stating the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); *see also* Rule 33(a)(1) (stating the court may grant leave to serve additional interrogatories).

[51] *Swinney v. State Farm Fire & Cas. Co.*, No. CIV.A. 10-2021-CM, 2011 WL 209372, at *2 (D. Kan. Jan. 21, 2011) ("The court prefers, where possible, to resolve cases on their merits, and not on technical violations of the rules. . . . In its rulings, the court has attempted to apply the rules and the law in a fair, consistent, and correct manner, while keeping the ends of justice in mind."); *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2015 WL 3742929, at *2 (D. Kan. June 15, 2015) (Court stated it would not deny party the opportunity to develop the merits of its argument based on a technical error and noting this "Court has long expressed its preference for resolving disputes on their merits, however, rather than on technicalities.").

The Court further notes the above interrogatories are part of the last set of discovery Plaintiffs propounded before the July 1, 2018 discovery deadline. Additionally, Defendants have only put forth supernumerary objections to answering these interrogatories and the interrogatories, on their face, appear relevant to Plaintiffs' claims and unburdensome to answer. The Court, therefore, will order Defendants to answer them. If Defendants have answered these interrogatories in previous discovery responses, they may simply direct Plaintiffs to those responses. The Court cautions, however, that because discovery is closed, no new discovery requests will be allowed, absent some extremely compelling reason.

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion as it relates to Interrogatory Nos. 52, 55, and 56. Defendants are therefore **ORDERED** to provide Plaintiffs with answers to these interrogatories **within 10 days** from the date of this Order.

**IT IS THEREFORE ORDERED**, for the reasons stated above, that Plaintiffs' Motion to Compel is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 30th day of August 2018.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge
