IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GENE HIRT, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNIFIED SCHOOL DISTRICT NO. 287, et al.,<br><br>    Defendants. | CASE NO. 2:17-CV-02279-HLT |

## MEMORANDUM AND ORDER

    Pro se Plaintiffs Gene Hirt and Eric Clark bring this action pursuant to 42 U.S.C. § 1983 (2012) for Defendants' alleged violation of their constitutional rights under the First, Fifth and Fourteenth Amendments in connection with a July 13, 2015 letter banning Plaintiff Hirt from entering school district property for any reason, under any circumstance.[1] Plaintiffs seek partial summary judgment on Plaintiff Hirt's First-Amendment-based and Fourteenth-Amendment-based claims under Counts I and II of the operative complaint and Plaintiff Clark's First-Amendment-based claims under Count V. Plaintiffs also seek issuance of a permanent injunction. Because Plaintiffs' motion relies on disputed facts, the Court denies partial summary judgment with respect to Counts I, II, and V. Similarly, the necessity of a jury trial on Plaintiffs' legal claims on the instant record also prevents the Court from ruling on Plaintiffs' request for equitable relief in the form of a permanent injunction. Plaintiffs' request for a permanent injunction by way of motion for partial summary judgment is, therefore, also denied.

---

[1] Plaintiffs also assert state law claims for Defendants' alleged violation of the Kansas Open Meetings Act ("KOMA"), K.S.A. §§ 75-4317 to 75-4320f (2016), and the Kansas Open Records Act ("KORA"), K.S.A. §§ 45-215 to 45-254 (1993).

## I. BACKGROUND[2]

Within the last decade, both Plaintiffs Hirt and Clark have resided within the area served by the Unified School District No. 287 ("Defendant USD 287"). Doc. 113 at 2; Doc. 117 at 3. Defendant Jerry Turner ("Defendant Turner") serves as Superintendent of Schools for Defendant USD 287. Doc. 113 at 1; Doc. 117 at 1.

Defendant USD 287 holds monthly school board meetings where it conducts school board business and invites the public to attend. Doc. 117 at 7-8; Doc. 133 at 1-3. School board policy requires Defendant USD 287 to allow the public "limited time to voice opinions or problems" during these monthly meetings. Doc. 117 at 7-8; Doc. 133 at 1-3. The same policy that requires the school board to allow for public comment recognizes the need to conduct school board business "in an orderly and efficient manner and . . . therefore require[s] reasonable controls to regulate public presentations." Doc. 117 at 7-8; Doc. 133 at 1-3. To effectuate this policy, Defendant USD 287 has established what is known as the "patron forum" at the beginning of each meeting. Doc. 117 at 7; Doc. 133 at 1. Members of the public are allowed three minutes to speak but must first be recognized by the school board president. Doc. 117 at 7-8; Doc. 133 at 1-3.

There is no dispute that Plaintiffs Hirt and Clark have both attended at least some of Defendant USD 287's monthly school board meetings. Doc. 117 at 2-3; Doc. 117 at 2-9; Doc. 133 at 2. Plaintiff Hirt has attended and spoken during the patron forum of numerous school board meetings. Doc. 117 at 2-3; Doc. 117 at 2-9; Doc. 133 at 2. Plaintiff Clark has attended and spoken during the patron forum of at least three school board meetings. Doc. 117 at 2-3; Doc. 117 at 2-9; Doc. 133 at 2. Plaintiffs Hirt and Clark have attended at least two of the same school board

---

[2] Although some of the (cursory) background facts are not in dispute, several are contested. More importantly, the parties cannot agree on the facts material to the Court's ruling on Plaintiffs' partial summary judgment motion. Facts in dispute are identified as such when the dispute is genuine and material to the Court's ruling. *See* discussion of summary judgment standard, *infra* at Part III.

meetings. Doc. 117 at 2-3; Doc. 117 at 2-9; Doc. 133 at 2. The lawsuit centers on Defendants' response to Plaintiff Hirt's alleged conduct during these school board meetings and alleged unauthorized visits to Defendant USD 287's property at times outside of school board meetings. Plaintiff Clark's claims are, in large part, based on his alleged impressions of—and reactions to—Defendants' response to Plaintiff Hirt's admitted and alleged conduct.

There is no dispute that Plaintiff Hirt addressed the school board from the audience outside the patron forum of school board meetings without permission and the school board president reprimanded him for his behavior. Doc. 117 at 7; Doc. 133 at 2. Plaintiff Hirt also used profanity during school board meetings when he became frustrated over certain issues, mumbling the words "sons of bitches" on at least a "couple" of occasions. Doc. 117 at 7; Doc. 133 at 2. This concerning behavior culminated in an incident following a school board meeting on June 8, 2015, when Defendants allege Plaintiff Hirt approached Defendant Turner, moved within inches of his face, began to yell in a "menacing" tone, and threatened to "get" Defendant Turner if the school board changed the names of certain schools. Doc. 117 at 8. Plaintiffs controvert these facts and allege Defendant Turner approached Plaintiff Hirt while Plaintiff Hirt was carrying on a private conversation about the name-change issue with an out-going school board member. Doc. 113 at 8. Plaintiffs admit Plaintiff Hirt was angry but contend Plaintiff Hirt only called Defendant Turner a "dork" and was two to three feet away from Defendant Turner during the interaction. *Id.*

Following the July 8, 2015 school board meeting, on July 13, 2015, Defendant Turner—with the full authority of Defendant USD 287—sent a letter to Plaintiff Hirt informing Plaintiff Hirt that, because of his "rude and uncivil behavior following the June [8]th, 2015, USD 287 Board Meeting," Plaintiff Hirt would "no longer be allowed on USD 287 property for any reason or under any circumstance." Doc. 93-1 at 1; Doc. 113 at 1; Doc. 117 at 2. The letter also notified Plaintiff

Hirt that Defendant Turner provided a copy to the Sheriff's Office in Franklin County, Kansas, and, if Plaintiff Hirt was found on Defendant USD 287's property thereafter, the Sheriff would be notified and asked to remove Plaintiff Hirt. *Id.*

Defendants contend the July 13, 2015 letter banning Plaintiff Hirt from Defendant USD 287's property was precipitated not only by the alleged incident following the June 8, 2015 school board meeting and Plaintiff Hirt's behavior at prior school board meetings, but also prior conduct by Plaintiff Hirt while on Defendant USD 287's property. On February 26, 2015, Plaintiff Hirt allegedly entered an elementary school classroom during school hours despite having no children, grandchildren, or family members who attend Defendant USD 287's schools. Doc. 117 at 6-7. On March 25, 2015, Plaintiff Hirt brought a photographer to an elementary school during school hours to take photographs and staff directed him outside the building. Doc. 117 at 6-7. On April 2, 2015, Plaintiff Hirt allegedly returned to the same elementary school, was denied access to the building, and spoke harsh words to the principal. Doc. 117 at 7. Defendants allege the staff relayed to Defendant Turner that they were concerned for their safety that day. *Id.* Defendants also allege that, between February 4, 2015 and June 29, 2015, witnesses observed Plaintiff Hirt driving through school parking lots during school hours on at least sixteen occasions. Doc. 117 at 6. Plaintiff Hirt does not do any business with Defendant USD 287 to justify these visits to USD 287 property. Doc. 117 at 8. Plaintiffs controvert almost all of these facts on either factual or legal grounds. Doc. 133 at 1-2.

Plaintiff Clark became aware of the July 13, 2015 letter Defendants sent to Plaintiff Hirt after reading quotes from the letter published in The Ottawa Herald newspaper.[3] Doc. 113 at 2-3;

---

[3] Defendants dispute how The Ottawa Herald received a copy of the July 13, 2015 letter, but do not dispute that The Ottawa Herald published portions of the letter or that Plaintiff Clark became aware of the letter by reading the newspaper. Doc. 117 at 3.

4

Doc. 117 at 3. Plaintiff Clark attended a school board meeting, on August 12, 2015, after reading the article in the newspaper. Doc. 117 at 7; Doc. 133 at 2. During the meeting, Plaintiff Clark used the terms "ninnies" and "nincompoops." Doc. 117 at 9; Doc. 133 at 3. Defendants did not reprimand Plaintiff Clark despite his use of the terms "ninnies" and "nincompoops." Doc. 117 at 9; Doc. 133 at 3. Plaintiff Clark has not attended a school board meeting since August 12, 2015. Doc. 117 at 7; Doc. 133 at 2.

On August 15, 2015, a month after receiving the July 13, 2015 letter from Defendants, Plaintiff Hirt attended an open house event at an elementary school within Defendant USD 287's borders. Doc. 113 at 2; Doc. 117 at 3. At Defendants' request, a Deputy Sheriff from the Franklin County Sheriff's Office advised Plaintiff Hirt that he needed to leave the premises and Plaintiff Hirt left. Doc. 113 at 2; Doc. 117 at 3. Plaintiff Clark also attended the open house and witnessed the Deputy Sheriff advise Plaintiff Hirt that he needed to leave. Doc. 113 at 3; Doc. 117 at 4.

## II. PROCEDURAL HISTORY

Plaintiffs originally filed their lawsuit against seven defendants, including five school board members, but they later voluntarily dismissed the five school board members and their official-capacity claims against Defendant Turner. Docs. 1, 6, 49. Plaintiffs' remaining claims are those against Defendant USD 287 and their individual capacity claims against Defendant Turner. Doc. 93. The operative complaint includes eleven causes of action, including Counts I, II, and V, which are the subject of Plaintiffs' instant motion.

After initially filing suit, Plaintiffs sought a preliminary injunction to enjoin Defendants from taking "adverse action against Plaintiff Hirt based upon the July 13, 2015 letter" and from enforcing the "ad hoc policy" requiring them to express themselves in a "socially acceptable manner" at school board meetings. Doc. 4 at 11. During the preliminary injunction briefing, Defendant Turner mailed Plaintiff Hirt a letter on June 14, 2017, which permitted Plaintiff Hirt to

attend any meeting or event on Defendant USD 287's property to which the public is invited, so long as Plaintiff Hirt "refrain[s] from disruptive behavior" and "limit[s] [his] participation in the meetings to the allotted three minutes for public comments." Doc. 20-3. As a result, the Court denied Plaintiffs' motion for injunctive relief. Doc. 41. Plaintiffs sought reconsideration of the Court's order, which the Court denied. Doc. 62.

On May 29, 2018, Plaintiffs filed their instant motion seeking partial summary judgment on three issues: (1) the liability determination for violation of Plaintiff Hirt's First Amendment and due process rights under Counts I and II, limited to the theories that (a) the July 13, 2015 letter is an unconstitutional categorical ban on Plaintiff Hirt's free speech rights; and (b) the categorical ban was issued absent due process;[4] (2) the liability determination for violation of Plaintiff Clark's First Amendment rights under Count V; and (3) the need for a permanent injunction enjoining Defendant USD 287 from enforcing its "socially acceptable manner" restriction. *See generally* Doc. 112. Defendants submitted their opposition on July 10, 2018, arguing Plaintiffs' motion "misreads the applicable law, relies on disputed evidence and should be denied." Doc. 117 at 1. Plaintiffs filed their reply on August 6, 2018. Doc. 133. Though ripe for decision, the Court agrees with Defendants that Plaintiffs' motion relies on disputed evidence and should be denied.

## III. STANDARD

Summary judgment is appropriate if "the record, including depositions, documents, . . . affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establishes that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477

---

[4] Plaintiffs reserve the possibility of filing second partial summary judgment motion asserting additional theories of liability under Counts I and II and seeking summary judgment on additional Counts of the operative complaint. The Court reminds Plaintiffs that, per the Pretrial Order (Doc. 138 at 15), if they file a second partial summary judgment motion, their brief or memorandum in support of such motion shall be no longer than thirty pages total.

U.S. 242, 247 (1986) (quoting prior version of Rule 56). The moving party bears the initial burden to establish the absence of a genuine issue of fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To carry this burden, the nonmovant "may not rely merely on . . . its own pleadings." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (internal quotations and citations omitted). "Rather, it must come forward with facts supported by competent evidence." *Id.* The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In applying this standard, courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587.

## IV. ANALYSIS

Federal law recognizes a private cause of action against any person who, under color of state law, "subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The parties agree that Defendants are persons who acted under color of state law and that Defendant Turner was acting on behalf of/with the authority of Defendant USD 287. Doc. 113 at 1, 8-15; Doc. 117 at 2, 13 n.2. The issue, thus, is whether the categorical ban on Plaintiff Hirt's attendance at Defendant USD 287's school board meetings deprived Plaintiffs of their constitutional rights.

### A. Plaintiff Hirt's First Amendment Claim (Count I)

The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I, § 1. The Fourteenth Amendment extends this free speech guarantee to government actors. *Everson v. Bd. of Educ.*, 330 U.S. 1, 8 (1947). But an individual's right to free speech is not absolute and "[e]ven protected

7

speech is not equally permissible in all places at all times." *Snyder v. Phelps*, 562 U.S. 443, 456 (2011) (internal quotations and citations omitted). Courts employ a three-step process to analyze free speech claims: (1) determine whether the plaintiff's conduct is protected speech; (2) "identify the nature of the forum, because the extent to which the [defendant] may limit access depends on whether the forum is public or nonpublic"; and (3) determine "whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). Courts also distinguish between "prior restraint" claims and "retaliation" claims. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010) (citations omitted). "A prior restraint claim is distinct from a retaliation claim because it is based on a restriction that chills potential speech before it happens rather than an adverse action taken in response to actual speech." *Id.* "Generally, a 'prior restraint' restricts speech in advance on the basis of viewpoint and carries a presumption of unconstitutionality." *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 42 (10th Cir. 2013).

The parties agree on only two issues: (1) the July 13, 2015 letter is a prior restraint; and (2) it addresses conduct by Plaintiff Hirt that potentially qualifies as protected speech—i.e., speaking during the patron forum of Defendant USD 287's school board meetings.[5] Every other step of the analysis is in dispute.

---

[5] The Court recognizes that Defendants dispute whether Plaintiff Hirt's conduct constitutes protected speech in the context of a retaliation claim. Doc. 117 at 11-13. But Plaintiffs reserve the retaliation theory for a future, second partial summary judgment motion and, thus, the Court's ruling does not address the retaliation theory or whether Plaintiff Hirt's conduct constitutes protected speech under any such theory. Defendants also suggest the July 13, 2015 letter addresses at least some conduct by Plaintiff Hirt that Defendants contend would not be protected speech in the context of a prior restraint analysis, but acknowledge that all of this conduct is Plaintiff Hirt's alleged prior conduct. Doc. 117 at 14. There appears to be no dispute that, insofar as the July 13, 2015 letter prevented Plaintiff Hirt from attending Defendant USD 287's future school board meetings and speaking during the patron forum, the restriction involved potentially protected speech—at least until that restriction was withdrawn in June 2017.

8

Plaintiffs contend the patron forum of school board meetings is a designated public forum, requiring a strict scrutiny analysis. In other words, any restrictions on speaking during the patron forum of school board meetings must be narrowly tailored to effectuate a compelling government interest. Finally, Plaintiffs contend the July 13, 2015 letter is a viewpoint-based restraint on Plaintiff Hirt's free speech rights, carrying a presumption of unconstitutionality. Defendants contend the patron forum is a limited public forum, allowing Defendants to impose time, place, and manner restrictions on speech so long as they are reasonable in light of the purpose served by the forum and are viewpoint-neutral. Defendants contend the July 13, 2015 letter is viewpoint-neutral because it served a purpose unrelated to the content of Plaintiff Hirt's speech—to curtail disruptive, belligerent, and crude behavior and address safety concerns—and not because Defendants disagreed with what Plaintiff Hirt said. The Court agrees with Defendants that the patron forum is a limited public forum. But the parties dispute the events that precipitated the July 13, 2015 letter and, thus, the Court cannot make the critical determinations of whether the restrictions imposed on Plaintiff Hirt were reasonable in light of Defendants' stated purposes or whether the July 13, 2015 letter was, in fact, viewpoint-neutral.

1. **The patron forum of Defendant USD 287's school board meetings is a limited public form.**

As noted above, a key step in the First Amendment analysis is determining the nature of the forum involved, because "[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983). Four types of fora may exist on government property: (1) traditional public fora; (2) designated public fora; (3) limited public fora; and (4) nonpublic fora. *Doe v. City of Albuquerque*, 667 F.3d

1111, 1128 (2012) (citations omitted). Critical to the instant analysis is the distinction between a designated public forum and a limited public forum.[6]

"[G]overnmental entities create designated public forms when 'government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose[.]'" *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 679 n.11 (2010) (internal citation omitted). Strict scrutiny applies to speech restrictions in the context of a designated public forum—they must be narrowly tailored to serve a compelling government interest. *Id.* "[G]overnmental entities establish limited public forums by opening property 'limited to use by certain groups or dedicated solely to the discussion of certain subjects.'" *Id.* In a limited public forum, "'a governmental entity may impose restrictions on speech that are reasonable and viewpoint-neutral.'" *Id.* The distinction between the two categories is somewhat elusive, but the Tenth Circuit has "identified three non-exhaustive factors to consider in determining whether the government has created a designated public forum: (1) the purpose of the forum; (2) the extent of use of the forum; and (3) the government's intent in creating a designated public forum." *Doe*, 667 F.3d at 1129. Here, all three factors support the conclusion that the patron forum portion of Defendant USD 287's school board meetings is a limited public forum dedicated solely to the discussion of school district business.

Plaintiffs suggest the purpose of the patron forum—factor one—is extremely broad, intended to permit the public to voice opinions on <u>any</u> subject. The Court disagrees. The school board policy that gives the public the right to voice its opinion is a policy requiring the school board to conduct school board business publicly. It is only within the context of conducting school

---

[6] Neither party contends the patron forum of Defendant USD 287's school board meetings is either a traditional public forum or a nonpublic forum.

board business that the public is given the right to comment and voice its opinion. This is further evidenced by the fact that the policy specifically recognizes that the school board has a responsibility to conduct school board business in an orderly and efficient manner and requires the school board to establish reasonable controls to regulate public presentations during school board meetings (i.e., the three-minute limitation and requirement that persons wishing to be heard must first be recognized by the school board president). These same considerations also bear on the second and third factors—the extent of use of and the government's intent in creating the forum. Defendant USD 287's school board meetings (and the patron forum in particular) are limited to allow the public a small window of time to express opinions on school board business. And the school board policy indicates it is Defendant USD 287's intention to limit the public forum to school board business. Particularly the portion of the policy recognizing that the school board has a responsibility to conduct school board business in an orderly and efficient manner. The Court therefore concludes that the patron forum of Defendant USD 287's school board meetings constitutes a limited public forum dedicated solely to the discussion of school board business.

### 2. Factual disputes preclude determination of whether the restrictions imposed on Plaintiff Hirt were reasonable and viewpoint-neutral.

Having determined that the patron forum of Defendant USD 287's school board meetings is a limited public forum, the remaining inquiry is whether the July 13, 2015 letter prohibiting Plaintiff Hirt from attending future school board meetings was a reasonable and viewpoint-neutral restriction. *See Martinez*, 561 U.S. at 679 n.11.

Government regulations on speech are viewpoint-based and impermissible "when the specific motivating ideology[,] . . . opinion[,] or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). "The principal inquiry in determining content neutrality . . . is whether the government has adopted a

regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791-92 (1989). A governmental entity may, however, restrict the time, place, and manner of speech so long as the restriction is reasonable and serves the purpose of the limited forum. *Pleasant Grove City v. Summum*, 555 U.S. 460, 469-70 (2009).

Here, factual disputes prohibit the Court from determining Defendants' rationale for issuing the July 13, 2015 letter and, thus, whether it was viewpoint-neutral. The parties cannot agree on the substance and nature of Plaintiff Hirt's conduct at the June 8, 2015 school board meeting that immediately preceded the July 13, 2015 letter, at prior school board meetings, or at other times while Plaintiff Hirt was on Defendant USD's property. Defendants characterize Plaintiff Hirt's conduct as so egregious that it gave rise not only to a need to impose restrictions that would quell Plaintiff Hirt's alleged disruptive, belligerent, and crude behavior, but also put an immediate end to what was perceived by Defendants as legitimate threats of potential violence against Defendant Turner, school board members, and other staff members of Defendant USD 287. Plaintiffs, on the other hand, characterize Plaintiff Hirt's behavior as only mildly disruptive on a few occasions. They admit it may have been personally offensive to Defendant Turner and some school board members, but they maintain that Plaintiff Hirt never threatened anyone and contend Defendants actually issued the ban because they disagree with Plaintiff Hirt's opinions and wanted to stop him from expressing those opinions at public board meetings.[7]

On the instant record, and without knowing which version of events occurred (Plaintiffs', Defendants', or perhaps some version in between) the Court cannot determine whether: (1) it was

---

[7] The parties unnecessarily and inappropriately complicated the resolution of the instant motion by inserting arguments when either stating or controverting a statement of fact. The Court will not tolerate this approach in future summary judgment motions or oppositions and reminds the parties of the strictures of FED. R. CIV. P. 56 and the associated Local Rules. If a party is unable to follow these requirements, the Court will take appropriate action.

Plaintiff Hirt's "motivating ideology", "opinion", or "perspective" that was Defendants' rationale for issuing the July 13, 2015 letter, rendering it viewpoint-based and impermissible; or (2) whether the July 13, 2015 letter was issued for the purpose of restoring order to school district meetings where Plaintiff Hirt had engaged in crude, belligerent, and disruptive behavior and caused Defendant Turner, the school board members, and other Defendant USD 287 staff to fear for their personal safety, potentially rendering the July 13, 2015 letter a reasonable and viewpoint-neutral time, place, and manner restriction. Simply put, on the current record, the disputed evidence regarding whether the July 13, 2015 letter was a reasonable and viewpoint-neutral restriction presents a sufficient disagreement to require submission to the jury. *Liberty Lobby*, 477 U.S. at 251-52. The Court denies summary judgment on Count I.[8]

### B. Plaintiff Hirt's Fourteenth Amendment Claim (Count II)

Plaintiffs also assert a claim for violation of Plaintiff Hirt's Fourteenth Amendment due process rights (Count II). Plaintiffs' brief in support of their motion contends Defendants violated Plaintiff Hirt's due process rights in numerous ways, but Plaintiffs limit their actual argument to a "single due process analysis for the right of free speech in the context of [the patron forum of Defendant USD 287's] school board meetings . . . ." Doc. 113 at 39. The Court's due process analysis is, thus, limited to the same context.

The Fourteenth Amendment's Due Process Clause has both procedural and substantive components. *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1181 (10th Cir. 2009); *see also, e.g.*,

---

[8] Plaintiffs cite the opinion of the United States District Court for the Middle District of Pennsylvania in *Barna v. Board of School Directors of the Panther Valley School District*, 3:12-CV-638, Doc. 95 (M.D. Pa. 2015), as authority for the proposition that a categorical ban on an individual's attendance at a public school board meeting can never be constitutionally permissible. The Court has read and considered the *Barna* opinion (and the subsequent appellate history) and is aware that Mr. Barna ultimately pursued a claim for nominal damages for violation of his First Amendment rights. But the parties in *Barna* agreed there was no genuine dispute as to the material facts. In this case and on the instant record, the parties have a genuine dispute on several material facts, which renders summary judgment inappropriate.

*Washington v. Glucksberg*, 521 U.S. 702, 719 (1997) (recognizing that the Fourteenth Amendment does more than guarantee a fair process and covers a substantive sphere as well); *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (same); *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (same). Plaintiffs' brief is not a model of clarity as to whether Plaintiff Hirt is asserting a procedural or substantive due process claim.

To the extent Plaintiff Hirt asserts a substantive due process claim, his First Amendment claim under Count I subsumes any such claim. The Supreme Court has stated that, because it is "reluctant to expand the concept of substantive due process . . . [w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (internal quotations and citations omitted).

To the extent Plaintiff Hirt asserts a procedural due process claim, disputed facts prevent the Court from conducting the requisite analysis. Courts "examine procedural due process questions in two steps: first, determine whether there exists a liberty or property interest which has been interfered with by the governmental actor; and, second, determine whether the procedures attendant upon that deprivation were constitutionally sufficient. *Moore v. Bd. of Cty. Comm'rs of Cty. of Leavenworth*, 507 F.3d 1257, 1259 (10th Cir. 2007). The second step—determining the constitutionality of the procedures employed—requires consideration of three factors: (1) the "private interest that will be affected by the official action"; (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the "[g]overnment's interest, including the

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

Because of the factual disputes in this case, at this stage of the litigation, the Court cannot evaluate the second and third factors set forth by the Supreme Court in *Mathews*.[9] The Court's inability to weigh these factors precludes a proper procedural due process analysis under the Fourteenth Amendment and, thus, partial summary judgment on Plaintiff Hirt's claim under Count II is denied. *Liberty Lobby*, 477 U.S. at 251-52. (discussing denial of summary judgment where there is sufficient disagreement over relevant facts to require submission to the jury).

### C. Plaintiff Clark's First Amendment Claim (Count V)

Plaintiff Clark asserts individual First Amendment claims against Defendants on the basis that: (1) he has suffered an injury-in-fact because he self-censored his own speech after learning of the restrictions Defendants placed on Plaintiff Hirt; and (2) the "overbreadth" doctrine allows unharmed individuals to challenge governmental policies that may be applied unconstitutionally to others, in other situations not before the court. Doc. 44 at 44 (internal quotations and citations omitted).

Plaintiff Clark's claims are, in essence, derivative of Plaintiff Hirt's claims. The same disputed facts that prevent the Court from resolving Plaintiff Hirt's First and Fourteenth Amendment claims are those that ultimately led Plaintiff Clark to pursue his claims of self-censorship and overbreadth. Based on the record currently before the Court there is sufficient disagreement to require submission to the jury. *Liberty Lobby*, 477 U.S. at 251-52. Partial summary judgment on Plaintiff Clark's First Amendment claim under Count V is also denied.

---

[9] For example, without knowing Defendants' motivation and justification for issuing the July 13, 2015 letter, the Court cannot determine whether any deprivation of Plaintiff Hirt's free speech rights would be erroneous (*Mathews* factor two) or what government interests are implicated and to what extent (*Mathews* factor three).

### D. Plaintiffs' Request for Permanent Injunction

In addition to seeking partial summary judgment on their First and Fourteenth Amendment claims under Counts I, II, and V of the operative complaint, Plaintiffs seek a permanent injunction. The request relates to particular language in the July 13, 2015 letter that stated the letter was issued because of Plaintiff Hirt's inability to express himself in a "socially acceptable manner." Doc. 113 at 45-46; *see also* Doc. 93-1. Plaintiffs contend that, although Defendants sent Plaintiff Hirt a letter on June 14, 2017, stating he was once again allowed to attend Defendant USD 287's school board meetings, the June 14, 2017 letter did not remove the previous restriction created by the July 13, 2015 letter that he conduct himself in a "socially acceptable manner." In essence, Plaintiffs seek a permanent injunction preventing Defendants from enforcing any policy that Plaintiff Hirt conduct himself in a "socially acceptable manner" during school board meetings. Doc. 113 at 45-46. The Court, however, is not in a position to rule on Plaintiffs' request for equitable relief in the form of a permanent injunction.

In a case where: (1) there are factual disputes, (2) legal and equitable claims are joined; and (3) a jury trial is demanded on the legal claims, it is impermissible for the district court to infringe on a party's jury trial rights by trying any legal issues incidental to the equitable one. *See, e.g.*, *Dairy Queen, Inc. v. Wood*, 396 U.S 531, 537-34 (1970); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 507-09 (1959). The legal claims must be tried first by a jury and the district court is bound by any jury findings relevant to its decision to grant or deny equitable relief.

Plaintiffs' request for a permanent injunction is included in the operative complaint that also includes numerous other legal claims. *See generally* Doc. 93. Defendants have demanded a jury trial. Doc. 97 at 6. And there are numerous factual issues in dispute. *See* discussion of background facts, *supra* at Part I. Under binding legal precedent and the current record, the Court must allow Plaintiffs' legal claims to first be tried by a jury. The Court will then be bound by any

jury findings relevant to its decision to grant or deny Plaintiffs' requested equitable relief (i.e., a permanent injunction). Because the necessity of a jury trial on Plaintiffs' legal claims precludes the Court from ruling on Plaintiffs' request for permanent injunction, that portion of Plaintiffs' motion for partial summary judgment is also denied.

## V. CONCLUSION

Plaintiffs' partial summary judgment motion relies on disputed facts, prohibiting the Court from conducting the requisite analysis to determine whether Defendants violated Plaintiffs' First and/or Fourteenth Amendment rights (Counts I, II, and V). Similarly, based on the current record, the necessity of a jury trial on Plaintiffs' legal claims also prevents the Court from ruling on Plaintiffs' request for equitable relief in the form of a permanent injunction.

THE COURT THEREFORE ORDERS that Plaintiffs' First Motion for Partial Summary Judgment (Doc. 112) is DENIED.

IT IS SO ORDERED.

DATED: December 4, 2018

*/s/ Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE